UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JAMES SNOWDEN,                                        :
                Plaintiff,                          :
                                         :            **OPINION AND ORDER**
v.                                                    :
                                         :            17 CV 2631 (VB)
DOUGLAS SOLOMON, JILL WEYERS,                          :
CARMEN RUE, VILLAGE OF MONTICELLO,    :
ROBERT MIR, and RAYMOND NARGIZIAN,    :
                Defendants.                    :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiff James Snowden brings this action under 42 U.S.C. § 1983, alleging defendants

violated his First Amendment rights by retaliating against him on the basis of his protected

political association with Gordon Jenkins, the former Mayor and Village Manager of the Village

of Monticello (the "Village").

Before the Court is defendants' motion to dismiss the complaint under Rule 12(b)(6).

(Doc. #27).

For the reasons set forth below, defendants' motion is DENIED.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

**BACKGROUND**

In deciding the pending motion to dismiss, the Court accepts as true all well-pleaded

factual allegations in the complaint and draws all reasonable inferences in plaintiff's favor, as set

forth below.

I.      Code Enforcement Officer

Plaintiff was appointed Village Code Enforcement Officer/Building Inspector (hereinafter "Code Enforcement Officer")[1] in May 2010.

The Code Enforcement Officer is appointed by the Village Manager and must "possess background experience related to building construction or fire prevention."  Village Code § 105-3(B).  The Code Enforcement Officer also must "obtain such basic training, in-service training, advanced in-service training and other training as the State of New York shall require for code enforcement personnel," as well as "certification from the State Fire Administrator."  Id.

The Code Enforcement Officer has the power and duty to, among other things, receive, review, and issue building permits and certificates; conduct construction inspections; issue stop-work orders; review and investigate complaints; issue orders remedying conditions violating the Village Code; pursue administrative enforcement actions and proceedings; and pursue legal actions and proceedings to enforce the Village Code.  Village Code § 105-3(A).

The Code Enforcement Officer also is empowered to issue appearance tickets, Village Code § 105-15(B); determine whether buildings are abandoned and take action to board up abandoned buildings, id. § 109-4; remedy violations that could endanger public safety or depreciate property value, id. § 109-5.2; and inspect dangerous and unsafe buildings and report in writing findings and recommendations to the Village's Board of Trustees (the "Village Board"), id. § 119-5.  Failure to comply with a written order of the Code Enforcement Officer carries criminal and civil penalties.  Id. § 105-15(C)(2), (4).

---

[1]      Although the Village Code refers to both a "Building Inspector" and a "Code Enforcement Officer," see, e.g., Village Code § 109-5.2, available at https://ecode360.com/MO0528, the parties refer to plaintiff as "Building Inspector/Code Enforcement Officer," see, e.g., Opp'n at 1.  The Court construes the pleadings to allege the positions are the same.

Finally, the Code Enforcement Officer may enforce provisions of the Village Code prohibiting excessive noise, Village Code § 185-10, and litter, id. § 177-14; require the Village Attorney to take appropriate legal action for failure of a party to comply with an order remedying housing violations, id. § 165-44; and upon the showing of proper credentials and in the discharge of duties, enter any building, structure, or premises at any reasonable hour, id. § 165-45.

II.      The Complaint

In 2012, Gordon Jenkins, the Village's Mayor and one of five members of the Village's Board of Trustees, also became Village Manager. Plaintiff and Jenkins "developed a close working relationship as they sought to rid the village of unsafe buildings, implement a long-agreed upon goal of replacing an old courthouse with a youth center and refurbishing the aging village's infrastructure and streets." (Compl. ¶ 14). At some point, plaintiff also became head of the Village's Parks and Recreation Department.

In March 2014, defendants Douglas Solomon and Jill Weyers were elected to the Village Board on a platform that opposed Jenkins and his policies. They joined defendant Carmen Rue, also a member of the Village Board, "to form a voting bloc bent on replacing Jenkins as Village Manager, reversing policies enacted during Jenkins' term as Mayor and ridding the village government of those who supported Jenkins, including plaintiff." (Compl. ¶ 17). They raised funds from third parties and identified counsel to advocate for Jenkins's and plaintiff's removal, "targeting [plaintiff] as one of Jenkins' key supporters they wished to remove from office." (Id. ¶ 22).

Solomon, Weyers, and Rue then appointed defendant Raymond Nargizian as Village Manager. Nargizian also sought to "rid the village" of Jenkins and plaintiff. (Compl. ¶ 19).

3

Between April and June 2014, Nargizian fired plaintiff's secretary and left him without assistance; abrogated plaintiff's two-year employment contract; denied plaintiff's request to use accrued leave time and ordered an audit of plaintiff's accrued time; and removed plaintiff from his office, placing him in a smaller office in the Village Hall.

In addition, defendant Robert Mir, the Village police chief, "aggressively and baselessly questioned plaintiff" about his alleged involvement in the removal of fifty-five chairs from a community center. (Compl. ¶ 23(d)).

Solomon, Weyers, and Rue also hired someone that another town had fired for misconduct to replace plaintiff's assistant. Nargizian then treated the new assistant as if the assistant, rather than plaintiff, were the Code Enforcement Officer.

Subsequently, Solomon, Weyers, Rue, and Nargizian suspended plaintiff and locked him out of his office, preventing him from collecting records he needed to defend criminal and administrative charges they had brought against him. The charges were based on Chief Mir's false statement that plaintiff told a demolition contractor hired by Jenkins there was no asbestos in the old courthouse. In January 2017, the criminal charges were dismissed "in the interest of justice." (Opp'n Ex. 1 at 4).

Plaintiff alleges Solomon, Weyers, and Rue caused plaintiff's removal from his office.

Plaintiff brings claims pursuant to 42 U.S.C. § 1983 alleging all the defendants took these actions against plaintiff to punish him for his political association with Jenkins, thereby violating his First Amendment rights.

**DISCUSSION**

I.     Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiffs' legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). The court may nevertheless consider a document not incorporated by reference if the complaint "'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

However, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." Id. (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." Id. (quoting Faulkner v. Beer, 463 F.3d at 134).

The Court may also take judicial notice of local ordinances and regulations, Meserole St. Recycling, Inc. v. City of New York, 2007 WL 186791, at *2 (S.D.N.Y. Jan. 23, 2007), and public records from plaintiff's related prior legal proceedings, Jackson v. New York State, 523 F. App'x 67, 68 (2d Cir. 2013) (summary order).

II.     First Amendment Claims

    A.     Policymaker

Defendants argue plaintiff was a "policymaker" because of his role as Code Enforcement Officer and therefore he is not entitled to First Amendment protection from retaliation based on political association.

The Court disagrees.

"As a general rule, public employees may not be dismissed for the exercise of their First Amendment rights." Kaluczky v. City of White Plains, 57 F.3d 202, 208 (2d Cir. 1995). There is an exception, however, for public employees who are policymakers. "[P]olitical affiliation and political viewpoint are permissible employment criteria for positions involving 'policy-making and confidential employees.'" Id. (quoting Rutan v. Republican Party of Ill., 497 U.S. 62, 71 n.5 (1990)).

A defendant raising this affirmative defense bears the burden of proof. Cicchetti v. Davis, 607 F. Supp. 2d 575, 577 (S.D.N.Y. 2009). The defendant "must demonstrate a compelling interest to justify any infringement of an employee's First Amendment rights, . . .

[and] must therefore show that party affiliation is an appropriate requirement for the effective performance of the public office involved." Kaluczky v. City of White Plains, 57 F.3d at 208 (internal citations and quotation marks omitted). "Whether an employee is a policymaker is a question of law for the Court, though it requires a factual inquiry into the nature of the job itself." Cicchetti v. Davis, 607 F. Supp. 2d at 577–78.

To determine whether an employee is a policymaker, the Court must "discern the duties inherent in the offices held by the plaintiff[]," rather than examine the duties actually performed. Gordon v. Cty. of Rockland, 110 F.3d 886, 888 (2d Cir. 1997). The Court looks at eight factors:

> whether the employee (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of policymakers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders.

Vezzetti v. Pellegrini, 22 F.3d 483, 486 (2d Cir. 1994). "This list is not exhaustive, but instead serves as a guide; no one factor or group of factors is always dispositive." Butler v. N.Y.S. Dep't of Law, 211 F.3d 739, 744 (2d Cir. 2000). Factors (4) through (8) are distilled into the question of "whether the employee in question is empowered to act and speak on behalf of a policymaker, especially an elected official." Gordon v. Cty. of Rockland, 110 F.3d at 890.

Although it is a close call, drawing all reasonable inferences in plaintiff's favor the Court finds plaintiff has adequately alleged he was not a policymaker.

First, plaintiff is not exempt from civil service protection. See Gordon v. Cty. of Rockland, 110 F.3d at 890 & n.5 (finding it was "important" but not dispositive that plaintiffs were exempt from civil service). Thus, the first factor weighs in plaintiff's favor.

Second, the Code Enforcement Officer must possess background experience related to building construction or fire prevention and receive training required by the state. The second factor thus weighs in defendants' favor.

Third, the Village Code authorizes the Village Manager to appoint one or more enforcement officers to act under the Code Enforcement Officer's supervision and direction. But it does not require the Village Manager to do so. Thus, because at this stage the Court is required to draw all reasonable inferences in plaintiff's favor, the third factor weighs in plaintiff's favor.

And fourth, although several provisions in the Village Code could be construed to allow the Code Enforcement Officer to speak in the name of policymakers, such as the ability to approve or disapprove of permits and pursue administrative enforcement and legal actions, Village Code § 105-3(A)(1), (9)-(10), there is nothing in the Village Code that indicates whether the Code Enforcement Officer is perceived as a policymaker by the public or responsive to partisan politics and political leaders. Moreover, nothing in the Village Code explicitly designates the Code Enforcement Officer as a confidential or policymaking position.

Further, although the Village Code provides for the Code Enforcement Officer to interact with the Village Attorney and Village Manager, those are appointed positions, not elected. See Village Code § 45-5, 12. In fact, the Code Enforcement Officer's primary interaction with elected officials, as provided for in the Village Code, is to submit written reports to the Village Board. Id. §§ 105-14(A), 119-5.

Therefore, on the whole, factors (4) through (8) weigh in plaintiff's favor.

Defendants emphasize plaintiff's close working relationship and shared objectives

with Jenkins. However, as noted above, the Court must examine the duties inherent in

the office, not the duties actually performed. See Gordon v. Cty. of Rockland, 110 F.3d

at 888. Thus, at this early stage of the case, the Court is not persuaded plaintiff's close

working relationship and shared objectives with Jenkins show the Code Enforcement

Officer is empowered to act and speak on behalf of a policymaker.

Accordingly, because the Vezzetti factors weigh in plaintiff's favor, the Court

finds plaintiff has sufficiently alleged he was not a policymaker.

B.      Defendant Nargizian

Defendants argue plaintiff fails to state a First Amendment retaliation claim as to

Nargizian.

The Court disagrees.

"To establish a First Amendment retaliation claim for political association in the public

employment context, a plaintiff must show that:  (1) he was engaged in protected activity; (2) he

suffered an adverse employment decision; and (3) there was a causal connection between the

protected activity and the adverse employment decision." Bierce v. Town of Fishkill, 656 F.

App'x 550, 552 (2d Cir. 2016) (summary order).

An adverse employment action occurs when "the retaliatory conduct in question would

deter a similarly situated individual of ordinary firmness from exercising his or her constitutional

rights." Kohutka v. Town of Hempstead, 994 F. Supp. 2d 305, 319 (E.D.N.Y. 2014) (quoting

Nixon v. Blumenthal, 409 F. App'x 391, 392 (2d Cir. 2010)).  "Adverse employment actions

include discharge, demotion, refusal to hire, refusal to promote, and reprimand." Kaluczky v.

City of White Plains, 57 F.3d at 208. Lesser actions may also suffice. Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002).

Plaintiff alleges Nargizian shared Solomon, Weyer, and Rue's "animus" toward plaintiff and that he acted in concert with them to suspend plaintiff because of plaintiff's political association with Jenkins. Plaintiff's allegations are sufficient to survive a motion to dismiss.

Defendants argue plaintiff fails to allege Nargizian's involvement in the decision to remove plaintiff from office. However, plaintiff's allegation that Nargizian was involved in the decision to suspend plaintiff is sufficient to show an adverse employment action, even if Nargizian was not involved in plaintiff's eventual termination. Cf. Washington v. Cty. of Rockland, 373 F.3d 310, 320 (2d Cir. 2004) ("[T]he threat of administrative disciplinary proceedings, and the concomitant thirty-day suspension without pay . . . could have a deterrent effect.") (internal citations omitted).

Accordingly, plaintiff has adequately stated a First Amendment retaliation claim against Nargizian.

C.      Defendant Mir

Defendants argue plaintiff fails to state a First Amendment retaliation claim as to Chief Mir because Mir's alleged false statement that plaintiff told a demolition contractor there was no asbestos in the old courthouse did not cause any adverse employment consequences.

The Court disagrees.

Plaintiff alleges Mir's statement was used to support a frivolous criminal prosecution and was "[a] predicate" for administrative charges against him. This is sufficient to plead that Mir caused an adverse employment action. Cf. Anemone v. Metro. Transp. Auth., 410 F. Supp. 2d 255, 267 (S.D.N.Y. 2006) (plaintiff's allegation the defendant orchestrated a retaliatory

investigation which led to plaintiff's suspension and firing sufficient to state an adverse employment action).

Accordingly, plaintiff has adequately stated a First Amendment retaliation claim against Chief Mir.

II.     Qualified Immunity

Defendants argue they are entitled to qualified immunity.

The Court disagrees.

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

"The issues on qualified immunity are:  (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established;' and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful."  Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013) (quoting Taravella v. Town of Wolcott, 599 F.3d 129, 133–34 (2d Cir. 2010)). "[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted."  Hyman v. Abrams, 630 F. App'x 40, 42 (2d Cir. 2015) (summary order).

Here, plaintiff has sufficiently alleged First Amendment retaliation claims against all six defendants.  Further, during the time period described in the complaint, it was clearly established law that retaliation for protected political association violates the Constitution.  Moreover,

11

without the benefit of a fuller factual record, the Court cannot conclude defendants were

objectively reasonable to believe their actions did not violate such clearly established law.

## CONCLUSION

The motion to dismiss is DENIED.

The Clerk is instructed to terminate the motion. (Doc. #27).

Dated: March 19, 2018
   White Plains, NY

        SO ORDERED:

        Vincent L. Briccetti
        United States District Judge