# AFFIDAVIT OF ROBERT MIR

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JAMES SNOWDEN,                                    Hon. Vincent L. Briccetti

                          Plaintiff,                **AFFIDAVIT**

-against-                                                         Case No.: 17-cv-02631-VB

DOUGLAS SOLOMON, JILL WEYERS,
CARMEN RUE, VILLAGE OF MONTICELLO,
ROBERT MIR, RAYMOND NARGIZIAN,

                         Defendants.
------------------------------------------------------------------X

STATE OF NEW YORK:
          ss.:
COUNTY OF ORANGE:

        Robert Mir, being duly sworn, deposes and states as follows:

        1.     I am a defendant in the above-captioned action. I have been the Village of Monticello police chief since 2012. I make this affidavit in support of the instant motion for summary judgment dismissing the plaintiff's complaint.

        2.     I understand that the plaintiff alleges in his complaint that I acted in concert with former Village Manager Raymond Nargizian, Village Trustee Carmen Rue, and former Village Trustees Jill Weyer and Douglas Solomon to "fabricate materially false information" against the plaintiff to cause him to be terminated as code enforcement officer of the Village of Monticello and subjected to criminal charges because of his alleged political association with former Village Mayor Gordon Jenkins. There is no merit to that allegation, which I categorically deny.

        3.     At the outset, I did not have knowledge of any political association that the plaintiff claims that he had with Mr. Jenkins. During the plaintiff's period of employment, I am

unaware of any political activities that he engaged in on behalf of, or against, Mr. Jenkins or any other candidate for office.

4. In addition, and in any event, at no time did I discuss the fabrication of false information or evidence against the plaintiff in connection with any administrative proceeding, criminal proceeding or otherwise with Mr. Nargizian, Ms. Rue, Ms. Weyer or Mr. Solomon. Nor did I ever speak with them about taking any adverse action whatsoever against the plaintiff. The plaintiff's allegation that I acted in concert with them to retaliate against him because of his alleged political association with Mr. Jenkins is a complete falsehood.

5. Further, at no time did I attribute any false statements to the plaintiff concerning the demolition of the old courthouse in the Village of Monticello. The plaintiff alleges, in particular, that I falsely attributed to him a statement that the plaintiff "told a demolition contractor hired by Jenkins that there was no asbestos in the old courthouse." (See ¶ 25 of the complaint.) I personally observed the plaintiff state to the contractor on the date that the demolition began that there was no asbestos present.

6. The plaintiff also alleges (and misrepresents) in his complaint that I "aggressively and baselessly questioned [him] about his alleged involvement in the removal of 55 chairs from the Stroebel Community Center." (See ¶ 23(d) of the complaint.) In June 2014, a village resident, Hannah Bernstein, who is involved with a senior citizen organization that uses the community center, reported to the Village police department that approximately 50 chairs that her organization had stored in the community center were missing. Thereafter, in investigating Ms. Bernstein's complaint, I visited the community center. Since the plaintiff was present in the community center at the time that I visited the community center, I made an inquiry of him – on that one occasion only – and other persons (i.e., maintenance workers) who were present at the

2

time in the community center as to whether they had any knowledge or information as to where the chairs might be located. The narrative report following my investigation provides, in part, as follows:

> Officer spoke with CEO Snowden, Burrell and Lemke. Burell states that he has worked at the Neighborhood Facility for 8 months and in that time he has not seen any additional chairs than the ones in the rec. room. Burrell and Snowden do not remember seeing any other upholstered chairs. Building storage areas checked with negative results. 55 chairs are accounted for in the rec. room.

7.  Given that the plaintiff had been occupying space in the community center, my inquiry of him was not "baseless" as he would most likely be in the best position to know how to respond to Ms. Bernstein's complaint, including whether the chairs ever were, in fact, stored in the community center during the time that he maintained an office there and, if so, where the chairs were last stored. In addition, I am surprised that the plaintiff characterizes my inquiry as "aggressive." My inquiry was not aggressive. I simply asked the plaintiff and other persons present if they had any information as to the chairs. The plaintiff indicated that he did not, which ended my inquiry. I did not make any further inquiries of him on any other occasion concerning the chairs, did not suspect of him of removing the chairs, and did not accuse him of removing the chairs.

8.  Moreover, any in any event, my inquiry of the plaintiff resulted from my investigation into the complaint that was made by Ms. Bernstein. I did not ask the plaintiff whether he had any information about the chairs in retaliation for his alleged political association with Mr. Jenkins or at the suggestion of Mr. Nargizian, Ms. Rue, Ms. Weyer or Mr. Solomon.

3

Nor did I ever even discuss Ms. Bernstein's complaint with Mr. Nargizian, Ms. Rue, Ms. Weyer or Mr. Solomon.

9. While the plaintiff does not allege that I was involved in his office moves from Village Hall to the community center to Village Hall, I would like to briefly address the plaintiff's claim in his complaint that he was moved to "a cramped closet-like space at Village Hall" as I am familiar with the office that had been occupied by the plaintiff at Village Hall. (See ¶ 23(e) of the complaint.) When the plaintiff's office was moved back to Village Hall from the community center, the plaintiff had his own private office, which was approximately eight-by-ten feet and included a full-size desk, one or two chairs on the other side of the desk, and a couple of filing cabinets. This was the same office that the plaintiff had occupied before his office was moved to the community center. In addition, the plaintiff's office at Village Hall was connected to a conference room work area, which was approximately sixteen-by-fourteen feet. The plaintiff's contention that his office was "a cramped closet-like space" is baseless.

10. Finally, I note that I was not involved with the preparation of the charges against the plaintiff in connection with the Civil Service Law §75 hearing.

WHEREFORE, it is respectfully requested that the instant motion for summary judgment be granted, together with such other and further relief deemed just and proper.

_____
ROBERT MIR

Sworn to before me
this 6th day of June 2019

_____
Notary Public

RALPH PUGLIELLE JR.
Notary Public, State of New York
Qualified in Ulster County
Registration No. 02PU6031116
Commission Expires September 27, 20 21