# AFFIDAVIT OF DOUGLAS SOLOMON

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JAMES SNOWDEN,                                    Hon. Vincent L. Briccetti

                Plaintiff,         **AFFIDAVIT**

-against-                                                     Case No.: 17-cv-02631-VB

DOUGLAS SOLOMON, JILL WEYERS,
CARMEN RUE, VILLAGE OF MONTICELLO,
ROBERT MIR, RAYMOND NARGIZIAN,

                Defendants.
------------------------------------------------------------------X

STATE OF NEW YORK:
        ss.:
COUNTY OF ORANGE:

      DOUGLAS SOLOMON, being duly sworn, deposes and states as follows:

      1.     I am a defendant in the above-captioned action. I am a former Village of Monticello mayor and trustee, having been elected as trustee in March 2014 and appointed as interim village mayor in 2015. In March 2016, I was elected as village mayor, but resigned in May 2018 when I was hired as the police chief for the City of Newburgh. I also was previously employed as a police officer of the Village of Monticello Police Department from September 1988 to March 2012. I make this affidavit in support of the instant motion for summary judgment.

      2.     At the outset, I categorically deny the plaintiff's allegation in his complaint that I acted in concert with former Village Manager Raymond Nargizian, Village Trustee Carmen Rue, former Village Trustee Jill Weyer, and Village Police Chief Robert Mir to "fabricate materially false information" against the plaintiff to cause him to be terminated as code enforcement officer of the Village of Monticello and subjected to criminal charges because of his alleged political association with former Village Mayor Gordon Jenkins. At no time did I ever discuss with Mr.

1

Nargizian, Ms. Rue, Ms. Weyer or Chief Mir the fabrication of any information or evidence to be used against the plaintiff in connection with any administrative or criminal proceeding, or otherwise. Nor did I ever fabricate any information or evidence to be used against the plaintiff in connection with any administrative or criminal proceeding, or otherwise.

3. Similarly, I categorically deny the plaintiff's allegation in paragraph "23" of his complaint that I, Ms. Rue and Ms. Weyer directed Mr. Nargizian, upon his appointment as village manager or at any time prior to or after his appointment, "to materially alter for the worse the terms and conditions" of the plaintiff's employment. At no time did I ever advise Mr. Nargizian to worsen the plaintiff's terms and conditions of employment. Nor did I ever discuss that topic with Ms. Rue or Ms. Weyer.

4. In addition, at no time did I ever act to raise funds from third parties or identify legal counsel for the purpose of removing the plaintiff from office as he alleges in his complaint. While the plaintiff alleges in his complaint that he was "targeted" to be removed from office and subjected to other alleged adverse employment action because of his alleged political association with Mr. Jenkins, I did not "target" the plaintiff or take any adverse action against him based on any alleged political association that he claims to have had with Mr. Jenkins. In that regard, I had no knowledge of the political association that the plaintiff claims that he had with Mr. Jenkins and, during the plaintiff's period of employment, was unaware of any political activities that he engaged in on behalf of Mr. Jenkins or any other candidate for office. I am unaware of any actions undertaken by the plaintiff either for or against me during any of my campaigns.

5. I will address the circumstances leading up to the plaintiff's suspension and ultimate termination. On August 13, 2014, the plaintiff was indicted by a Sullivan County grand jury in connection with his involvement with the demolition of an old courthouse in the Village

2

of Monticello and charged with one count of Bribe Receiving in the Third Degree (PL § 200.10), one count of Criminal Mischief in the Second Degree (PL § 145.10), two counts of Conspiracy in the Fifth Degree (PL § 105.05(1)), three counts of Official Misconduct (PL § 195.00(1), (2)), one count of Endangering Public Health, Safety or Environment (ECL § 71–2711(3)), and one count of Criminal Nuisance in the Second Degree (PL § 240.45(1)). (A true and accurate copy of the Sealed Indictment (No. 156S-2014) is annexed as Exhibit "E.") At a meeting of the Board of Trustees that was held on August 19, 2014 after the plaintiff had been indicted, the Board of Trustees voted to suspend the plaintiff *with pay* in accordance with Civil Service Law §75. I, Ms. Rue and Ms. Weyer voted in favor of the suspension. Mr. Jenkins, who had also been indicted, voted against the suspension while another trustee abstained. (A true and accurate copy of the meeting minutes are annexed as Exhibit "F.")

6. I did not vote in favor of suspending the plaintiff because of any alleged political association that he claims to have had with Mr. Jenkins. Rather, I voted in favor of suspending the plaintiff because he, while under indictment for actions specifically undertaken in his capacity as code enforcement officer, could not continue enforcing the applicable building codes against village residents under such circumstances. Accordingly, I voted in favor of suspending the plaintiff with pay pending the resolution of the criminal charges and Civil Service Law §75 hearing.[1]

7. Thereafter, based upon the same conduct for which the plaintiff was under indictment and other acts undertaken in his capacity as code enforcement officer, the Village preferred charges against the plaintiff for incompetency and misconduct. Charge 1 pertained to the plaintiff having been indicted by a Sullivan County grand jury. Charges 2 and 3 pertained to

---

[1] The plaintiff alleges that I was involved in locking him out of his office after he was suspended. At no time did I deny the plaintiff access to his office or discuss locking the plaintiff out of his office with Ms. Rue, Ms. Weyer, Mr. Nargizian of Chief Mir. Nor did the plaintiff ever broach this issue with me.

3

various actions that the plaintiff took or failed to take as code enforcement officer, which endangered the health, safety and welfare of others. (A true and accurate copy of the Notice and Statement of Charges Pursuant to the Provisions of Section 754 of the Civil Service Law is annexed as Exhibit "G.") I, in my capacity as mayor, and former Village Manager David Sager (who has not been named a party defendant) signed the charges. I was not involved in the preparation of the charges and did not testify at the Civil Service Law §75 hearing. Nor was I consulted about the testimony or evidence to be presented at the Civil Service Law §75 hearing.

8. The hearing officer thereafter issued his report, which is dated September 9, 2016, after the Civil Service Law §75 hearing was concluded. The hearing officer found, in part, as follows:

> It is clear that the non-action of Respondent Snowden in allowing the demolition of the old Courthouse on Pleasant Street to go forward, knowing that no permit for the demolition had ever been issued by the Village Manager and also knowing that no asbestos abatement had ever been performed on the old Courthouse building, was a serious dereliction of duty constituting incompetency and misconduct. Asbestos exposed during a demolition is a well known potential health and safety hazard to all involved, not only the person working on the demolition but to the general public. The old Courthouse, being on Pleasant Street, the main thoroughfare leading into the Village and being in the vicinity of various commercial establishments frequented by the public, made the risk of a potential health hazard even greater. . . . Snowden, as the Code Enforcement Officer, had the duty to enforce the Village Code and all applicable State codes and had the obligation and duty to make sure that the demolition took place with a validly issued permit and that the permit was supported by, at the every [sic] least, appropriate safeguards and an asbestos abatement program. None of these required steps occurred.

A true and accurate copy of the hearing officer's report is annexed as Exhibit "I."

See Exhibit "I," pp. 6-7.

9. By Notice of Determination dated September 12, 2016, which was signed by

4

former Village Manager David A. Sager and which I signed in my capacity as mayor, the plaintiff's employment was terminated. Given the findings of the hearing officer, I agreed with Mr. Sager's decision to terminate the plaintiff, which was not based on the plaintiff's alleged political association with Mr. Jenkins.

10. I understand that the plaintiff has alleged that I undertook other alleged retaliatory action against him, including that I, Ms. Rue and Ms. Weyer voted to abrogate his employment contract. While I voted in favor of rescinding and voiding the plaintiff's employment, I did not do so to retaliate against the plaintiff for his alleged political association with Mr. Jenkins, but, rather, based upon the discussion at the Board of Trustees meeting at the subject May 20, 2014 meeting. (A true and accurate copy of the meeting minutes is annexed as Exhibit "O.") At that meeting, it became clear that the employment contract that had been signed by the plaintiff and Mr. Jenkins had never been seen or reviewed by any of the prior or new village trustees, including myself. In addition, legal counsel expressed at the meeting that the employment contract was, in essence, illegal as it sought to bind a successor Board of Trustees and usurp the ability of the Board of Trustees to make appointments, and could be deemed to constitute an illegal gift. As reflected in the meeting minutes, legal counsel expressed that "[i]t's not only that the Board didn't approve it, but there are other things that in my opinion were violated. . . ." (See Exhibit "O," p. 7.) Legal counsel also opined that one person could not hold two civil service positions. (See Exhibit "O," p. 8.) The employment contract signed by the plaintiff and Mr. Jenkins would have permitted the plaintiff to hold the civil service position of code enforcement officer and the civil service position of director of parks and recreation.

11. The plaintiff also references in his complaint the hiring of an assistant code enforcement officer, T.J. Brawley. While the plaintiff alleges that I, Ms. Rue and Ms. Weyer

5

"hired" Mr. Brawley, the village manager is responsible for the hiring of code enforcement officers under the village code. Under Village Code §105-3(B), "[t]he Code Enforcement Officer shall be appointed by the Village Manager. In addition, the Village Manager may appoint more than one Code Enforcement Officer, provided that sufficient funds are available in the Village Budget to support said appointment." At the July 1, 2014 meeting of the Board of Trustees, the Board of Trustees was presented with a resolution to set the salary of Mr. Brawley, who was hired by the village manager, at $47,000.00. However, after discussion, the Board of Trustees voted in favor of Mr. Brawley filling a 90-day temporary position at a salary not to exceed $15,000.00 to assist with code enforcement activities during the summer. As the plaintiff was planning on using his accrued time for an extended vacation, which would have left the code enforcement office without coverage, it was necessary to hire an assistant code enforcement officer to assist with the workload. I, former Trustee Larissa Bennett (who is not a named defendant), Ms. Rue, and Ms. Weyer voted in favor of this resolution. Mr. Jenkins abstained. (A true and accurate copy of the July 1, 2014 meeting minutes is annexed as Exhibit "T.")

12. The plaintiff also claims in his complaint that he was retaliated against because of his alleged political association with Mr. Jenkins when his office was moved back to Village Hall. The plaintiff's office relocation did not have anything to do with the plaintiff's alleged political association with Mr. Jenkins. I, former Trustee Bennett, Ms. Weyer and Ms. Rue voted in favor of moving the building department/code enforcement office back to Village Hall as the location of the building department/code enforcement office in Village Hall was simply a more practical location. Other than a few months in 2014, the building department has always been located in Village Hall to my recollection.

6

WHEREFORE, it is respectfully requested that the instant motion for summary judgment be granted, together with such other and further relief deemed just and proper.

                                                                                     _____
                                                                                     DOUGLAS SOLOMON

Sworn to before me
this 7 day of June 2019

_____
Notary Public

CLAUDIA DEMORA
Notary Public, State of New York
Qualified In Orange County
No. 01DE6223671
My Commission Expires: June 14, 2021