UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

JAMES SNOWDEN,                                                    Hon. Vincent L. Briccetti

                                    Plaintiff,                    **<u>AFFIDAVIT</u>**

        -against-                                                 Case No.: 17-cv-02631-VB

DOUGLAS SOLOMON, JILL WEYERS,
CARMEN RUE, VILLAGE OF MONTICELLO,
ROBERT MIR, RAYMOND NARGIZIAN,

                                    Defendants.
-------------------------------------------------------------------------X

STATE OF NEW YORK  :
                             ss.:
COUNTY OF SULLIVAN:

        JILL WEYER, being duly sworn, deposes and states as follows:

        1.      I am a defendant in the above-captioned action. I am a former Village of

Monticello trustee, having been elected in March 2014. I served in that capacity until March

2018 when my term ended; I did not seek re-election. I make this affidavit in support of the

instant motion for summary judgment dismissing the plaintiff's complaint.

        2.      At the outset, I did not, at any time, act in concert with former Village Manager

Raymond Nargizian, former Village Trustee Douglas Solomon, Village Trustee Carmen Rue and

Village Police Chief Robert Mir to "fabricate materially false information" against the plaintiff to

cause him to be terminated as code enforcement officer of the Village of Monticello and

subjected to criminal charges because of his alleged political association with former Village

Mayor Gordon Jenkins. I did not have any discussions, at any time, with Mr. Nargizian, Mr.

Solomon, Ms. Rue or Chief Mir pertaining to the fabrication of any information or evidence to

be used against the plaintiff in connection with any administrative or criminal proceeding, or

otherwise. I also did not, at any time, direct Mr. Nargizian, upon his appointment as village manager or at any time prior to or after his appointment, to worsen the terms and conditions of the plaintiff's employment. I was never a party to any such conversation with anyone.

3.     I also did not, at any time, raise funds from third parties or identify legal counsel for the purpose of removing the plaintiff from office as he alleges in his complaint. I did not seek to take any adverse employment action against the plaintiff because of his alleged political association with, or alleged support of, Mr. Jenkins and was not even aware of any political activities that he engaged in on behalf of, or against, Mr. Jenkins or any other elected official. I also am not aware of any activities that the plaintiff undertook in support of, or against me, when I ran for office.

4.     The plaintiff alleges in his complaint that he was retaliated against in that, among other things, Mr. Nargizian sought an audit of the plaintiff's accrued time. However, the issue of an audit did not arise because of the plaintiff's alleged political association with Mr. Jenkin, but, rather, because the plaintiff had sought to use almost two months of accrued time in seeking to take leave from office for a period of time from May 19, 2014 to August 4, 2014. As evidenced by the meeting minutes of the June 17, 2014 meeting of the Board of Trustees, I and Mr. Solomon were, in general, opposed to the expenditure of any money for the purpose of conducting an audit to determine an employee's accrued time and were particularly concerned that the Village and the Village's payroll company did not maintain adequate records from which an employee's accrued time could be readily determined internally. (A true and accurate copy of the meeting minutes is annexed as Exhibit "N.") We then voted to table this issue until such time that Mr. Nargizian could be present to address this issue.

5.      As for the plaintiff's claim that he was retaliated against when he was moved back to Village Hall from the community center, the plaintiff's office was not moved back to Village Hall in retaliation for his political association with Mr. Jenkins, but, rather, because Village Hall is a more practical location for the building department/code enforcement office. It is more conducive and business-friendly to members of the public for the building department/code enforcement office to be located in Village Hall. Otherwise, for example, members of the public would have to visit the community center to apply for a permit, visit the clerk at Village Hall to pay for the permit, and then return to the community center to retrieve the permit.  Prior to the brief period of time that the building department/code enforcement office was located in the community center, the building department/code enforcement office had, to my knowledge, always been located in Village Hall. I was not involved as to the particulars of the location of the plaintiff's office within Village Hall and did not discuss that issue with Mr. Nargizian or anyone else.

6.      In addition, while the plaintiff also alleges in his complaint that I voted to rescind his employment contract in retaliation for his alleged political association with Mr. Jenkins, I voted to rescind his employment contract based upon the discussion at the May 20, 2014 meeting of the Board of Trustees at which legal counsel opined that the contract was illegal at it could be deemed to constitute an illegal gift and would allow one person to hold two civil service positions in violation of the Civil Service Law.

7.      Further, the hiring of T.J. Brawley as an assistant code enforcement officer was not an act of retaliation toward Mr. Snowden. At a July 1, 2014 meeting of the Board of Trustees, the Board of Trustees was presented with a resolution to set the salary of Mr. Brawley, who was hired by the village manager, at $47,000.00. I did not direct or request that Mr.

Nargizian hire an additional code enforcement officer. However, I supported the hiring of an additional code enforcement officer to assist with the needs of the code enforcement office/building department. To that end, after the Board of Trustees discussed this issue, the Board of Trustees voted in favor of Mr. Brawley filling a 90-day temporary position at a salary not to exceed $15,000.00 to assist with code enforcement activities during the summer.[1]

8.      As for the plaintiff's suspension, the plaintiff was not suspended because of any alleged political association with Mr. Jenkins, but, rather, because the plaintiff had been indicted on August 13, 2014 by a Sullivan County grand jury in connection with his involvement with the demolition of an old courthouse in the Village of Monticello and charged with one count of Bribe Receiving in the Third Degree (PL § 200.10), one count of Criminal Mischief in the Second Degree (PL § 145.10), two counts of Conspiracy in the Fifth Degree (PL § 105.05(1)), three counts of Official Misconduct (PL § 195.00(1), (2)), one count of Endangering Public Health, Safety or Environment (ECL § 71–2711(3)), and one count of Criminal Nuisance in the Second Degree (PL § 240.45(1)). (A true and accurate copy of the Sealed Indictment (No. 156S-2014) is annexed as Exhibit "E.")

9.      After the plaintiff was indicted (and based on his indictment), I voted at a meeting of the Board of Trustees that was held on August 19, 2014 in favor of suspending the plaintiff *with pay* in accordance with Civil Service Law §75. (A true and accurate copy of the meeting minutes are annexed as Exhibit "F.") Suspension was appropriate considering that the plaintiff had been indicted for acts undertaken in his capacity as code enforcement officer.

10.     As for the Civil Service Law §75 hearing, I was not involved in the preparation of charges in connection with the Civil Service Law §75 proceeding and did not testify at the

---

[1] I note that I was not involved in the decision to terminate the plaintiff's secretary. Nor did I have any conversations with Mr. Nargizian pertaining to the termination of the plaintiff's secretary. The Village Code vests the village manager with the authority to terminate employees.

hearing. I note that the village manager (who, at the time that the hearing officer's report was issued following the Civil Service Law §75 hearing, was David Sager) is empowered with the authority to appoint and remove village employees and officers under the Village Code. Upon the hearing officer's determination that the plaintiff had engaged in acts in his capacity as code enforcement officer that rose to the level of criminal activity, the plaintiff was terminated.

11.     Finally, although the plaintiff alleges that I locked him out of his office following his suspension, I did not lock the plaintiff out of his office following his suspension or direct anyone to lock him out of his office. Nor did I have keys or access to the plaintiff's office.

WHEREFORE, it is respectfully requested that the instant motion for summary judgment be granted, together with such other and further relief deemed just and proper.

JILL WEYER

Sworn to before me
this 13 day of June 2019

_____
Notary Public

Allen P. Ball
Notary Public, State of New York
Commission No.01BA6189870
Qualified in Erie County
Commission Expires June 30, 20 20

5