# AFFIDAVIT OF CARMEN RUE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JAMES SNOWDEN,                                                                    Hon. Vincent L. Briccetti

                                   Plaintiff,                                **AFFIDAVIT**

   -against-                                                                                     Case No.: 17-cv-02631-VB

DOUGLAS SOLOMON, JILL WEYERS,
CARMEN RUE, VILLAGE OF MONTICELLO,
ROBERT MIR, RAYMOND NARGIZIAN,

                                   Defendants.
------------------------------------------------------------------------X

STATE OF NEW YORK  :
                      ss.:
COUNTY OF SULLIVAN:

       CARMEN RUE, being duly sworn, deposes and states as follows:

       1.    I am a defendant in the above-captioned action. I am a current village trustee, having served in that capacity since 2008. I make this affidavit in support of the instant motion for summary judgment dismissing the plaintiff's complaint.

       2.    The plaintiff alleges in his complaint that I acted in concert with former Village Manager Raymond Nargizian, former Village Trustees Jill Weyer and Douglas Solomon, and Village Police Chief Robert Mir to "fabricate materially false information" against the plaintiff to cause him to be terminated as code enforcement officer of the Village of Monticello and subjected to criminal charges because of his alleged political association with former Village Mayor Gordon Jenkins. At no time did I ever discuss with Mr. Nargizian, Mr. Solomon, Ms. Weyer or Chief Mir the fabrication of any information or evidence to be used against the plaintiff in connection with any administrative or criminal proceeding, or otherwise. In addition, I did not, at any time, direct Mr. Nargizian, upon his appointment as village manager or at any time prior

1

to or after his appointment, "to materially alter for the worse the terms and conditions" of the plaintiff's employment. Nor did I ever discuss that topic with Mr. Solomon or Ms. Weyer.

3. In addition, I did not raise funds from third parties or identify legal counsel for the purpose of removing the plaintiff from office as he alleges in his complaint. Nor did I seek to take any adverse employment action against the plaintiff because of his alleged political association with Mr. Jenkin. The plaintiff was not politically active; I am unaware of any political activities that he engaged in on behalf of, or against, Mr. Jenkins or any other candidate running for office.

4. The plaintiff alleges in his complaint that he was retaliated against in that, among other things, his office was moved to a "cramped closet-like space at Village Hall." However, except for a few months in 2014 when the plaintiff occupied space in the community center, the location of the building department/code enforcement office had always been in Village Hall for as long as I can remember and, to this day, remains in Village Hall. Village Hall is simply a more practical location for the building department/code enforcement office. Members of the public are accustomed to visiting the building department/code enforcement office at Village Hall, not at a community center, and the location of the building department/code enforcement office in Village Hall is more efficient for the collection of money by the village clerk.

5. Further, by way of background, in the early 2000s, the alleged "closet-like space at Village Hall" was used by the mayor as his office. When the plaintiff was hired as code enforcement officer, he sought privacy and moved his belongings, including his desk and filing cabinets, into the mayor's former office, and began to occupy that office. In addition, the plaintiff and former Village Manager John Barbarite created a door to connect the plaintiff's private office with a larger work area. Therefore, the plaintiff could meet with members of the public in his

private office or in the work area. When the building department/code enforcement office was moved back to Village Hall from the community center, the plaintiff had the use of the same private office and work area that he had when he was hired and which he had used for the duration of his employment except for a few months when his office was located in the community center.

6. The plaintiff also alleges in his complaint that I voted to rescind his employment contract in retaliation for his alleged political association with Mr. Jenkins. However, my vote to rescind his employment contract was not an act of retaliation because of the plaintiff's alleged political association with Mr. Jenkins, but, rather, because, among other things, the contract had not been presented to the Board of Trustees to review its specific terms and approve it. (A true and accurate copy of the May 20, 2014 meeting minutes at which the plaintiff's employment contract was rescinded is annexed as Exhibit "O.") In addition, legal counsel for the Village expressed at the meeting that the employment contract was illegal as it would improperly bind a successor Board of Trustees and usurp the ability of the Board of Trustees to make appointments, could be deemed to constitute an illegal gift, and would allow one person to hold two civil service positions in violation of the Civil Service Law.

7. As for the hiring of T.J. Brawley as an assistant code enforcement officer, I and my co-trustees did not direct the village manager to hire Mr. Brawley. Rather, at the July 1, 2014 meeting of the Board of Trustees, the Board of Trustees was presented with a resolution to set the salary of Mr. Brawley, who was hired by the village manager, at $47,000.00. However, after we discussed this issue, the Board of Trustees voted in favor of Mr. Brawley filling a 90-day temporary position at a salary not to exceed $15,000.00 to assist with code enforcement activities during the summer. I note that Trustee Larissa Bennett, who is not a named defendant, also voted

3

in favor of this resolution. (A true and accurate copy of the July 1, 2014 meeting minutes is annexed as Exhibit "T.")[1]

8.      The plaintiff also alleges that he was suspended, and ultimately terminated, because of his alleged political association with Mr. Jenkins. However, the plaintiff's alleged political association with Mr. Jenkins did not have anything to do with his suspension or termination. On August 13, 2014, the plaintiff was indicted by a Sullivan County grand jury in connection with his involvement with the demolition of an old courthouse in the Village of Monticello and charged with one count of Bribe Receiving in the Third Degree (PL § 200.10), one count of Criminal Mischief in the Second Degree (PL § 145.10), two counts of Conspiracy in the Fifth Degree (PL § 105.05(1)), three counts of Official Misconduct (PL § 195.00(1), (2)), one count of Endangering Public Health, Safety or Environment (ECL § 71–2711(3)), and one count of Criminal Nuisance in the Second Degree (PL § 240.45(1)). (A true and accurate copy of the Sealed Indictment (No. 156S-2014) is annexed as Exhibit "E.") Accordingly, at a meeting of the Board of Trustees that was held on August 19, 2014 after the plaintiff had been indicted, the Board of Trustees voted to suspend the plaintiff *with pay* in accordance with Civil Service Law §75. (A true and accurate copy of the meeting minutes are annexed as Exhibit "F.")

9.      I voted in favor of suspending the plaintiff with pay pending the resolution of the criminal charges and a Civil Service Law §75 hearing because he, while under indictment for actions specifically undertaken in his capacity as code enforcement officer, could not continue enforcing the applicable building codes against village residents under such circumstances. Contrary to the plaintiff's allegation in his complaint, I did not lock the plaintiff out of his office following his suspension or direct anyone to lock him out of his office. I was not involved in the

---

[1] I note that I was not involved in the decision to terminate the plaintiff's secretary and did not have any conversations with Mr. Nargizian pertaining to the termination of the plaintiff's secretary.

4

preparation of charges in connection with the Civil Service Law §75 proceeding and did not testify at the hearing.

10. After the plaintiff was found by the hearing officer to have committed misconduct rising to the level of a crime, the Village terminated the plaintiff as code enforcement officer.

WHEREFORE, it is respectfully requested that the instant motion for summary judgment be granted, together with such other and further relief deemed just and proper.

_____<br>CARMEN RUE

Sworn to before me
this 11 day of June 2019

_____
Notary Public

NANCY PATTON
Notary Public - State of New York
NO. 01PA6347394
Qualified in Sullivan County
My Commission Expires Sep 6, 2020