UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JAMES SNOWDEN,                                              Hon. Vincent L. Briccetti

                                Plaintiff,                **RULE 56 STATEMENT**
                                                            **OF MATERIAL FACTS**
-against-

DOUGLAS SOLOMON, JILL WEYERS,                               Case No.: 17-cv-02631-VB
CARMEN RUE, VILLAGE OF MONTICELLO,
ROBERT MIR, RAYMOND NARGIZIAN,

                                Defendants.
-----------------------------------------------------------------X

Pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the defendants, Douglas Solomon, Jill Weyer, Carmen Rue, Village of Monticello, Robert Mir, and Raymond Nargizian, by and through their attorneys, Drake Loeb PLLC, submit the following statement of undisputed facts in connection with their motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

*(A)*    *Procedural History*

1.    The plaintiff commenced this action by the filing of a Complaint with the United States District Court for the Southern District of New York on April 12, 2017. (Docket Entry No. 1. See Exhibit "A.")

2.    The plaintiff's Complaint contains a single cause of action alleging that the defendants took adverse action against him in violation of his First Amendment rights based upon his alleged political association with former Village Manager/Mayor Gordon Jenkins ("Jenkins"), which ultimately resulted in the termination of his employment. (Exhibit "A.")

3. In lieu of answering, the defendants submitted a pre-answer motion to dismiss the Complaint pursuant to FRCP 12(b)(6) on the grounds that the plaintiff held a policymaking position and, therefore, could not assert a viable claim under the First Amendment for retaliation based on political association. (Docket No. 27.)

4. By Decision and Order dated March 19, 2018, the Court, although stating that "it is a close call," and drawing all reasonable inferences in the plaintiff's favor, denied the defendants' motion on the grounds that the plaintiff had adequately alleged that he was not a policymaker. (Docket No. 36, p. 7.)

5. Upon the denial of their motion, the defendants served an answer to the Complaint, which was thereafter amended. (See Exhibit "B.")

6. Upon the close of discovery and following a pre-motion conference, the defendants now move for summary judgment pursuant to FRCP Rule 56. The scheduling order provides for the defendants' motion to be served by June 14, 2019, the plaintiff's opposition to be served by July 15, 2019, and the defendants' reply to be served by August 5, 2019.

*(B)* *Parties*

7. The plaintiff, James Snowden, is a former code enforcement officer for the Village of Monticello ("the Village"). (Exhibit "X.")

8. Defendant Douglas Solomon is a former Village of Monticello trustee and mayor. (See Solomon's affidavit, ¶ 1.)

9. Solomon was elected as village trustee in March 2014. (See Solomon's affidavit, ¶ 1.)

10. Defendant Jill Weyer is a former Village of Monticello trustee, having been elected in March 2014. (See Weyer's affidavit, ¶ 1.)

2

11.    Defendant Carmen Rue is a current Village of Monticello trustee, having been elected in 2008. (See Rue's affidavit, ¶ 1.)

12.    Defendant Robert Mir is the Village of Monticello police chief, having been appointed to that position in 2012. (See Mir's affidavit, ¶ 1.)

13.    Defendant Raymond Nargizian is a former village manager of the Village of Monticello, having most recently held that position in 2014. (See Nargizian's annexed affidavit, ¶ 1.)

14.    The Village of Monticello is a municipal corporation located in the County of Sullivan. (Exhibit "A," ¶ 7.)

### (C)    *Plaintiff's Appointment*

15.    The plaintiff is a former code enforcement officer for the Village, having been appointed to that position by the village manager in May 2010. (Exhibit "X.")

16.    The Village of Monticello Code expressly authorizes and empowers the village manager,[1] and no other public official, to appoint a code enforcement officer and additional enforcement officers. (Exhibit "C," Village Code §105-3(B).)

17.    In particular, Village Code §105-3(B) provides as follows:

> The Code Enforcement Officer shall be appointed by the Village Manager. In addition, the Village Manager may appoint more than one Code Enforcement Officer, provided that sufficient funds are available in the Village Budget to support said appointment. The Code Enforcement Officer, or Officers as the case may be, shall possess background experience related to building construction or fire prevention and shall, within the time prescribed by law, obtain such basic training, in-service training, advanced in-service training and other training as the State of New York shall require for code enforcement personnel, and the Code Enforcement Officer shall obtain certification from the State Fire Administrator

---

[1] The village manager is appointed by the board of trustees. See Village Code §45-5, which is annexed as part of Exhibit "C" to the accompanying Declaration.

pursuant to the Executive Law and the regulations promulgated thereunder.

18. Pursuant to the Village Code, the village manager is empowered with the authority to appoint and remove village employees and officers, including the code enforcement officer. (Exhibit "C," Village Code §45-7.)

19. Village Code §45-7 provides:

> Such Village officers and employees as the Board of Trustees shall determine are necessary for the proper administration of the Village, except the Village Clerk, Village Attorney and Treasurer, shall be appointed by and may be removed by the Village Manager, but the Village Manager shall report each such appointment and removal to the Board of Trustees at the next meeting thereof following any such appointment or removal; the Village Clerk, Village Attorney, Village Treasurer and officers and members of the Police Department, where such a department has been established pursuant to law, shall be appointed and their salary or compensation fixed by the Board of Trustees. (Exhibit "C.")

### (D) *Plaintiff's Duties and Powers as Code Enforcement Officer*

20. The Village Code prescribes the code enforcement officer's duties and empowers the code enforcement officer to "administer and enforce all the provisions of the Uniform Code,[2] the Energy Code[3] and [Village Code Chapter 105]." (Exhibit "C," Village Code §105-3(A).)

21. Pursuant to Village Code §105-3(A), the code enforcement officer has the following powers and duties:

> (1) to receive, review, and approve or disapprove applications for building permits, certificates of occupancy/certificates of compliance, temporary certificates and operating permits, and the plans, specifications and construction documents submitted with

---

[2] The Uniform Code is the New York State Uniform Fire Prevention and Building Code. Exhibit "C," Village Code §105-2 (Word Usage; definitions).

[3] The Energy Code is the State Energy Conservation Construction Code. Exhibit "C," Village Code §105-2 (Word Usage; definitions).

such applications; (2) upon approval of such applications, to issue building permits, certificates of occupancy/certificates of compliance, temporary certificates and operating permits, and to include in building permits, certificates of occupancy/certificates of compliance, temporary certificates and operating permits such terms and conditions as the Code Enforcement Officer may determine to be appropriate; (3) to conduct construction inspections, inspections to be made prior to the issuance of certificates of occupancy/certificates of compliance, temporary certificates and operating permits, firesafety and property maintenance inspections, inspections incidental to the investigation of complaints, and all other inspections required or permitted under any provision of this chapter; (4) to issue stop-work orders; (5) to review and investigate complaints; (6) to issue orders pursuant to § 105-15A of this chapter;[4] (7) to maintain records; (8) to collect fees as set by the Board of Trustees of this Village; (9) to pursue administrative enforcement actions and proceedings; (10) in consultation with the Village's attorney, to pursue such legal actions and proceedings as may be necessary to enforce the Uniform Code, the Energy Code and this chapter, or to abate or correct conditions not in compliance with the Uniform Code, the Energy Code or this chapter; and (11) to exercise all other powers and fulfill all other duties conferred upon the Code Enforcement Officer by [Chapter 105].

22.    In addition, pursuant to Village Code §105-15(B), the code enforcement officer is authorized to issue appearance tickets for any violation of the Uniform Code, the Energy Code, or Chapter 105 of the Village Code. (Exhibit "C," Village Code §105-15(B).)

23.    Pursuant to Village Code §105-15(C), any person who does not comply with a written order issued by the code enforcement officer to remedy a condition determined by the code enforcement officer to be in violation of the Uniform Code, the Energy Code, or Chapter 105 of the Village Code or who otherwise violates any provision of Chapter 105 is guilty, upon conviction, of a crime (i.e., a misdemeanor) and is further subject to civil penalties and other penalties. (Exhibit "C.")

---

[4] Village Code §105-15(A) authorizes the code enforcement officer to "order in writing the remedying of any condition or activity found to exist in, on or about any building, structure, or premises in violation of the Uniform code, the Energy Code, or this chapter."

24. Pursuant to Chapter 109 of the Village Code, the code enforcement officer is empowered to make the determination as to whether a building is an abandoned structure and to issue a notice of violation pertaining to such an abandoned building demanding that the owner take action to board up the structure; the code enforcement officer may also order that any violations that could endanger public safety or which may depreciate property value be remedied. (Exhibit "C.")

25. The failure to comply with the code enforcement officer's directive subjects the property owner to a civil penalty of $100.00 per day. (Exhibit "C.")

26. Pursuant to Chapter 119, §119-5, of the Village Code, the code enforcement officer is empowered to render an opinion as to whether "any building or structure located in the Village of Monticello shall be deemed to be dangerous or unsafe to the public," to "make a formal inspection," and to "report in writing to the Village Board of Trustees his/her findings and recommendations in regard to the building's or structure's removal or repair." (Exhibit "C.")

27. The code enforcement officer has other powers, including, as an example, the same power given to the police department to enforce the Village statute prohibiting excessive noise with resulting fines upon conviction, and is further empowered to enforce the Village statute prohibiting litter. (Exhibit "C," Village Code Chapter 177, and Village Code §185-11 ("[t]he provisions of this chapter may be enforced by any police agency, public agency, the Code Enforcement Officer, Enforcement Officer or other officials designated by the Village Board of Trustees").

28. The code enforcement officer is duty-bound to administer the applicable housing standards and secure compliance, and may require "the Village Attorney to take appropriate legal action. . . ." (Exhibit "C," Village Code §165-44).

29. The code enforcement officer has the absolute right pursuant to Village Code §165-45(A), "upon the showing of proper credentials and in the discharge of his duties" . . . to "enter upon any building, structure or premises at any reasonable hour, and no person shall interfere with or prevent such entry." (Exhibit "C.")

### (E) *Demolition of Courthouse*

30. In October 2013, a building located on Pleasant Street in the village, which had at one time housed the village courthouse, was demolished by a private contractor. (Exhibits "I" and "S.") See also People v. Snowden, 49 Misc. 3d 1203(A), 28 N.Y.S.3d 650 (Sullivan Co. Ct. 2015).

31. At the time of its demolition, the building was in a dilapidated condition and contained asbestos. Id. (Exhibit "I," p. 4.)

32. No asbestos abatement was undertaken prior to the demolition of the building as required by law. Id. (Exhibit "I," p. 6.)

33. "[T]he demolition resulted in the release of asbestos fibers where workers and passersby would be exposed to the legislatively-recognized carcinogenic agent (see 12 NYCRR 56–1.2[a] )." Snowden v. Vill. of Monticello, 166 A.D.3d 1451, 1454, 89 N.Y.S.3d 366, 369 (3d Dep't 2018). (Exhibit "I.")

34. As a result of the demolition, "the New York State Department of Environmental Conservation, local and state police departments, and the District Attorney's Office converged on the scene and levied a plethora of DEC tickets on the contractor." People v. Snowden, 49 Misc. 3d 1203(A), 28 N.Y.S.3d 650 (Sullivan Co. Ct. 2015).

35. No permits had been issued prior to the demolition of the building. Snowden, 166 A.D.3d at 1454. (Exhibit "I.")

36. No stop work orders were issued by the plaintiff after the demolition began; rather, the state Department of Labor issued a stop work order. (Exhibit "D," pp. 142-43.)

37. The plaintiff informed the representative of the state Department of Labor who issued the stop work order that "there wasn't asbestos in the building." (Exhibit "D," p. 142:5-13.)

### (F) Indictment

38. On August 13, 2014, upon presentation of the facts and circumstances surrounding the demolition of the courthouse building by the People of the State of New York to a Sullivan County Grand Jury, the plaintiff was indicted and charged with one count of Bribe Receiving in the Third Degree (PL § 200.10), one count of Criminal Mischief in the Second Degree (PL § 145.10), two counts of Conspiracy in the Fifth Degree (PL § 105.05(1)), three counts of Official Misconduct (PL § 195.00(1), (2)), one count of Endangering Public Health, Safety or Environment (ECL § 71–2711(3)), and one count of Criminal Nuisance in the Second Degree (PL § 240.45(1)). (Exhibit "E.")

39. At a meeting of the Board of Trustees on August 19, 2014 (i.e., after the plaintiff had been indicted), the Board of Trustees voted to suspend the plaintiff *with pay* in accordance with Civil Service Law §75. (Exhibit "F.")

40. Rue, Solomon and Weyer voted in favor of the suspension. Jenkins, who had also been indicted, voted against the suspension while another trustee abstained. (Exhibit "F.")

### (G) Civil Service Law Section 75 Hearing

41. By "Notice and Statement of Charges Pursuant to the Provisions of Section 75 of the Civil Service Law" (hereinafter "Statement of Charges") dated July 1, 2016, the Village preferred charges against the plaintiff for incompetency and misconduct. (Exhibit "G.")

42. Charge 1 pertained to the plaintiff having been indicted by a Sullivan County Jury.

8

Charges 2 and 3 pertained to various actions that the plaintiff took or failed to take as code enforcement officer, which endangered the health, safety and welfare of others. (Exhibit "G.")

43. By Designation of Hearing Officer dated July 1, 2016, Marvin Newberg was designated as the hearing officer. (Exhibit "H.")

44. On July 27 and 28, 2016, a Civil Service Law §75 hearing was conducted. (Exhibit "I.")

45. The plaintiff was represented by legal counsel, Glenn Kroll, Esq., at the hearing. (Exhibit "I.")

46. The Village called seven witnesses at the hearing: Village Clerk Janine Gandy, Village Police Chief Robert Mir, Village Police Lieutenant Mark Johnstone, contractor Marciano Perez Soto, former Village Engineer John D. Fuller, current Village Engineer Glenn Smith, former Deputy Village Manager Walter Fedun, and former Village Manager David Sager ("Sager"). (Exhibit "I.")

47. The plaintiff cross-examined the Village's witnesses, testified on his own behalf, and offered exhibits into evidence. (Exhibit "I," p. 2.)

48. The plaintiff asserted a political association defense at the Civil Service Law §75 hearing. (Exhibits "U" and "Y.")

49. By Hearing Officer's Report dated September 9, 2016, the hearing officer determined that the plaintiff had engaged in conduct rising to the level of a crime in the performance of his duties as code enforcement officer. (Exhibit "I.")

50. The hearing officer made various findings of fact as follows:

(a) the courthouse building had been in disrepair for several years (Exhibit "I," p. 4);

(b) there were discussions among the Village Board of Trustees and Village officials,

including the plaintiff, that eventually the courthouse building would be demolished (Exhibit "I," p. 4);

(c) an asbestos report dated June 24, 2012 confirmed that there was asbestos material in the lower roof and roof shingles, the upper roof, the floor tiles and the exterior siding of the courthouse building (Exhibit "I," p. 4);

(d) the percentages of asbestos in the aforesaid areas all exceeded two percent (2%) (Exhibit "I," p. 4);

(e) there was a prior discussion between the Village engineer, the plaintiff and Jenkins regarding asbestos being present in the courthouse building prior to its demolition (Exhibit "I," p. 4);

(f) contractors were hired by Jenkins to demolish the courthouse building (Exhibit "I," p. 4);

(g) the plaintiff was aware of the contract/agreement pertaining to the demolition of the courthouse building (Exhibit "I," p. 4);

(h) the plaintiff was aware that there was asbestos present in the building although he was unaware of the exact percentages (Exhibit "I," p. 4);

(i) although the plaintiff was aware that asbestos was present, he never reviewed the report that was issued to ascertain the extent of the asbestos present in the building (Exhibit "I," p. 5);

(j) although a permit was required to be issued prior to the demolition, no permit had ever been issued (Exhibit "I," pp. 4-5);

(k) the plaintiff was aware that the old courthouse was being demolished and was present at or about the time that the demolition began (Exhibit "I," p. 5);

(l) the plaintiff had represented to contractors involved with the demolition that there was no asbestos present in the building (Exhibit "I," p. 5); and

(m) the plaintiff was aware that no asbestos abatement had been undertaken prior to the demolition of the courthouse building (Exhibit "I," p. 6).

The hearing officer found, in part, as follows:

> It is clear that the non-action of Respondent Snowden in allowing the demolition of the old Courthouse on Pleasant Street to go forward, knowing that no permit for the demolition had ever been issued by the Village Manager and also knowing that no asbestos abatement had ever been performed on the old Courthouse building, was a serious dereliction of duty constituting incompetency and misconduct. Asbestos exposed during a demolition is a well known potential health and safety hazard to all involved, not only the person working on the demolition but to the general public. The old Courthouse, being on Pleasant Street, the main thoroughfare leading into the Village and being in the vicinity of various commercial establishments frequented by the public, made the risk of a potential health hazard even greater. . . . Snowden, as the Code Enforcement Officer, had the duty to enforce the Village Code and all applicable State codes and had the obligation and duty to make sure that the demolition took place with a validly issued permit and that the permit was supported by, at the every [sic] least, appropriate safeguards and an asbestos abatement program. None of these required steps occurred.

Exhibit "I," pp. 6, 7.

51. Sager, who the plaintiff has not named as a defendant in this action and who is not alleged to have acted in concert with any defendant, exercised the power vested in him under Village Code §45-7 after the hearing officer determined that the plaintiff had engaged in conduct rising to the level of a crime in the performance of his duties as code enforcement officer and terminated the plaintiff. (Exhibit "J.")

52. By Notice of Determination dated September 12, 2016, which was signed by Sager and Solomon, the plaintiff's employment was terminated. (Exhibit "J.")

53. At the Board of Trustees meeting held on September 20, 2016, Sager reported the plaintiff's termination to the trustees as part of his report. (Exhibit "K.")

### (H) State Law Article 78 Proceeding

54. Thereafter, the plaintiff challenged the termination of his employment by the filing of an Article 78 proceeding in the Supreme Court of the State of New York, County of Sullivan. (Exhibit "Q.")

55. In support of his Article 78 petition, the plaintiff argued, in part, that his action did not rise to the level of a crime and that, therefore, the charges against him should have been dismissed as time-barred. (Exhibit "Q.")

56. The Article 78 proceeding was transferred by the Supreme Court to the Appellate Division, Third Department. See Snowden v. Village of Monticello, 166 A.D.3d 1451, 89 N.Y.S.3d 366 (3d Dep't 2018).

57. The Appellate Division, Third Department, by decision dated November 29, 2018, upheld the Village's determination to terminate the plaintiff's employment as being supported by substantial evidence. Snowden v. Village of Monticello, 166 A.D.3d 1451, 89 N.Y.S.3d 366 (3d Dep't 2018).

58. The Third Department found "substantial evidence in the record to sustain the charge that petitioner 'committ[ed] acts constituting crimes' — namely, endangering public health, safety or the environment in the fourth degree, official misconduct and criminal nuisance in the second degree — and, thus, to support the determination terminating petitioner's employment." Snowden, 166 A.D.3d at 1454.

59. The Third Department observed, *inter alia*, that the demolition of the courthouse had begun without the requisite permits and that "[i]t is further undisputed that the demolition

resulted in the release of asbestos fibers where workers and passersby would be exposed to the legislatively-recognized carcinogenic agent. . . . Petitioner testified that, although he was aware that the building contained asbestos and had discussed this report with respondent's civil engineer, John Fuller, he had not read the report and 'assumed' that the quantity of asbestos present did not require abatement. When asked why he did not investigate the issue of abatement further in his role as respondent's Code Enforcement Officer, he stated that he 'had no obligation' to do so." Id.

Dated: June 14, 2019
      New Windsor, New York

                              DRAKE LOEB PLLC

By: _____
RALPH L. PUGLIELLE, JR. (RLP-4294)
*Attorneys for Defendants*
555 Hudson Valley Avenue, Suite 100
New Windsor, New York 12553
Tel. No.: 845-561-0550