UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

JAMES SNOWDEN,                                          Hon. Vincent L. Briccetti

                      Plaintiff,          **NOTICE OF APPEAL**

    -against-                                       Case No.: 17-cv-02631-VB

DOUGLAS SOLOMON, JILL WEYERS,
CARMEN RUE, VILLAGE OF MONTICELLO,
ROBERT MIR, RAYMOND NARGIZIAN,

                      Defendants.
------------------------------------------------------------------X

        NOTICE IS HEREBY GIVEN that defendants Douglas Solomon, Jill Weyers, Carmen

Rue, Raymond Nargizian, and Village of Monticello hereby appeal to the United States Court of

Appeals for the Second Circuit so much of the Order of the Hon. Vincent L. Briccetti dated and

entered in this action on the 31st day of January 2020 as denied summary judgment in favor of

the individual defendants on the grounds of qualified immunity and so much of the said Order as

denied the defendants' motions for summary judgment as the Court may accept pendent

Appellate jurisdiction over.

Dated: February 27, 2020
      New Windsor, New York

                      Yours, etc.,

                      DRAKE LOEB PLLC

By: _____
                      Ralph L. Puglielle, Jr. (RP-4294)
                      *Attorneys for Defendants*
                      555 Hudson Valley Avenue, Suite 100
                      New Windsor, New York 12553
                      Tel. No.: (845) 561-0550

TO:    SUSSMAN & ASSOCIATES
*Attorneys for Plaintiff*
1 Railroad Avenue, 3rd Floor
P.O. Box 1005
Goshen, New York 10924
Attn.: Michael H. Sussman, Esq.
Tel. No.: (845) 294-3991

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JAMES SNOWDEN,                                    :
                          Plaintiff,              :
                                                  :
v.                                                :        **OPINION AND ORDER**
                                                  :
DOUGLAS SOLOMON, JILL WEYERS,                     :        17 CV 2631 (VB)
CARMEN RUE, VILLAGE OF MONTICELLO,                :
ROBERT MIR, and RAYMOND NARGIZIAN,                :
                          Defendants.             :
------------------------------------------------------------x

Briccetti, J.:

Plaintiff James Snowden brings this action under 42 U.S.C. § 1983, alleging defendants

violated his First Amendment rights by retaliating against him on the basis of his protected

political association with Gordon Jenkins, the former Mayor and Village Manager of the Village

of Monticello, New York (the "Village").

Now pending is defendants' motion for summary judgment.  (Doc. #59).[1]

For the reasons set forth below, defendants' motion is GRANTED IN PART and

DENIED IN PART.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

The parties have submitted briefs, declarations with exhibits, and statements of material

fact pursuant to Local Civil Rule 56.1, which reflect the following factual background.

---

[1]      On March 19, 2018, the Court denied defendants' motion to dismiss pursuant to Rule
12(b)(6).  (Doc. #36).

I.     Appointment as Code Enforcement Officer

In May 2010, the Village Manager appointed plaintiff to the position of code enforcement officer/building inspector.[2]  At the time, Gordon Jenkins was mayor, and at some point, Mayor Jenkins also became Village Manager.  Plaintiff, a registered member of the Democratic Party, was not aligned politically with Jenkins, a registered member of the Republican Party, when plaintiff was first hired.

II.    Demolition of the Old Village Courthouse[3]

The old Village courthouse had been in disrepair for several years.  The Village Board and other Village officials, including plaintiff, discussed demolishing the building and constructing a youth center on that property.

An asbestos report dated June 24, 2012, found asbestos exceeding two percent "in the lower roof and roof shingles and the upper roof and in the floor tiles and the exterior siding of the Courthouse building."  (Section 75 Hearing Dec. at 4).  The former Village Engineer discussed the issue of asbestos being present in the courthouse with plaintiff and Jenkins, but never personally showed the asbestos report to plaintiff.

The Village Code required that the Village Manager issue a permit for the demolition of the courthouse.  Before such a permit could be issued, the code enforcement officer had "to determine to have constructed adequate facilities for the protection of the public."  (Section 75 Hearing Dec. at 5).  No permit was issued.  Nonetheless, in October 2013, private contractors

---

[2]     The parties refer to the two terms interchangeably.  The Court hereinafter refers to the position as "code enforcement officer."

[3]     In July 2016, plaintiff was subject to a Civil Service Section 75 hearing on charges related to the demolition of the old courthouse.  As discussed infra, the hearing officer's factual findings are entitled to preclusive effect.  Accordingly, the Court draws on the section 75 hearing officer's factual findings in summarizing the circumstances regarding the demolition of the old courthouse.  (See Doc. #59 ("Puglielle, Jr. Decl.") Ex. I ("Section 75 Hearing Dec.")).

demolished the building.  Plaintiff was present "at or about the time that the demolition was commenced" and "knew that there was asbestos in the building but never looked at the [asbestos] report to determine the extent of the asbestos."  (Id.).

At plaintiff's subsequent section 75 hearing, plaintiff testified "he either felt or believed that there was less than 1% of asbestos in the affected areas of the old courthouse and therefore he determined that no asbestos abatement survey or asbestos abatement program needed to be undertaken or performed before the demolition occurred."  (Section 75 Hearing Dec. at 5). Moreover, the hearing officer credited the following testimony from defendant Police Chief Robert Mir:

> [O]n the date the demolition was to begin, [Mir] observed [plaintiff] speaking with Sam Kearney, whose company demolished the building, and heard Kearney advise [plaintiff] that he would not commence demolition unless he was provided with some documentation certifying that there was no asbestos in the building.  Chief Mir further testified that he saw and heard [plaintiff] come back to Kearney waving a piece of paper and saying there is no asbestos in the building and thereafter Kearney commenced work.

(Section 75 Hearing Dec. at 5).  Another witness who worked with Kearney on the demolition "also testified that [plaintiff] told him on more than one occasion that there was no asbestos in the building."  (Id.).

III.   The Village Board

On March 18, 2014, defendants Douglas Solomon and Jill Weyers were elected to the Village Board of Trustees (the "Village Board").  According to plaintiff, "[t]hey called for a new direction in the Village and were sharply critical of Mayor Jenkins and those associated with him."  (Doc. #65 ("Pl. Aff.") ¶ 13).  Plaintiff further avers, "Solomon and Weyers joined Rue to form a three vote majority and select [defendant Raymond Nargizian] as Village Manager, replacing Jenkins."  (Id).  Jenkins likewise testified Solomon and Weyers were opposed to all of

Jenkins's policies and intended to "get rid of" plaintiff.  (Doc. #64 ("Sussman Aff.") Ex. 8 at 112).

In January 2014, Rue published an article on her website criticizing Jenkins for, among other things, hiring plaintiff to the additional civil service position of recreation director and giving plaintiff a $15,000 raise.  On March 11, 2014, Rue published remarks on her website criticizing Jenkins's decision to "destroy the Village's youth department" and "plac[e] it under the control of [plaintiff]."  (Sussman Aff. Ex. 17 at ECF 2).[4]  In that article, Rue wrote she believed "reward[ing] Jenkins' . . . political ally violates NYS Civil Service Law."  (Id.).  Rue further wrote, presumably referring to plaintiff:  "a quorum of members of the board held an unlawful executive session in the Village Manager's office to work out the details of a proposed contract intended to protect Jenkins' . . . political ally and pal, and reinforce the $15,000 raise they voted for their buddy."  (Id.).  After describing why she believed plaintiff was not qualified to oversee the youth department, Rue wrote:  "Jenkins and his cronies did not follow lawful procedures and once the new board takes office, I believe they (including [plaintiff]) will be held accountable in more ways than one."  (Id. at ECF 3).

According to plaintiff, defendants took several retaliatory actions against him after Solomon and Weyers took office.

First, Nargizian terminated plaintiff's secretary.  However, Nargizian states plaintiff's secretary was terminated because "she had proven to be unreliable and had other work issues."  (Doc. #59-28 ("Nargizian Aff.") ¶ 6).  Moreover, Nargizian asserts plaintiff, like Nargizian, had the option of using the clerical office workers in Village Hall.

---

[4]     "Doc. # __ at ECF __" refers to the page numbers automatically assigned by the Court's Electronic Case Filing system.

Second, on May 7, 2014, plaintiff filled out an absence report indicating he intended to use fifty-four days of sick and vacation time between May 19 and August 4, 2014.  Nargizian denied his request in a letter, stating he was not aware of authorization for plaintiff's accumulating sick and vacation days from prior years.  Nargizian further stated being absent from work for eleven weeks "would constitute abandonment of the Department and the Village." (Sussman Aff. Ex. 24).  Nargizian explained there was no deputy code enforcement officer, and therefore there would be no one to carry out the duties for the department.  Plaintiff responded by letter to Nargizian, again requesting the time off as he had not taken vacation for two years, and stating the previous Village Board had agreed to carry over his unused sick and vacation time. The Village then contracted a local accounting firm "to review the accrued sick and vacation time earned by a specified employee"—presumably, plaintiff—"from August 1, 2012 through May 23, 2014."  (Id. Ex. 26).

Third, in May 2014, the Village Board rescinded a two-year contract given to plaintiff, which plaintiff states the prior Village Board had approved.  According to the Village Board's meeting minutes, Rue and other trustees stated the contract had never been presented to the Board and was therefore unauthorized.

Fourth, plaintiff states Nargizian took back a car that plaintiff had been assigned to perform his duties.  Defendants, however, point to the employment contract that the Village Board rescinded, which said the Village would provide plaintiff with a vehicle.

Fifth, plaintiff states Nargizian "directed that I move my office from an ample space at the Stroebel Center to a cramped closet-like space at Village Hall."  (Pl. Aff. ¶ 14).  However, according to Rue, except for the few months when plaintiff occupied space in the community center, the code enforcement officer's office "had always been in Village Hall for as long as I

can remember" and "is simply a more practical location" for the code enforcement office.  (Doc.
#59-31 ("Rue Aff.") ¶ 4).  Further, Rue states the Village Hall office was the same one plaintiff
had used when he was hired and before he was moved to the community center.

Sixth, according to plaintiff, when he returned to Village Hall, Nargizian went through
plaintiff's records without plaintiff's prior consultation.

Seventh, plaintiff asserts in June 2014, defendant Robert Mir, the Village's police chief,
told plaintiff Nargizian believed plaintiff had stolen chairs from the community center facility
that plaintiff had been managing and in which plaintiff had his office.  Plaintiff states, "Mir
antagonistically interviewed me in June 2014, essentially accusing me of doing so."  (Pl. Aff.
¶ 9).  A police report concerning the incident states fifty chairs were missing and that an officer
spoke with plaintiff, who did "not remember seeing any other upholstered chairs."  (Puglielle, Jr.
Decl. Ex. R).

Finally, plaintiff states in July 2014, Nargizian and the Board appointed someone to serve
as deputy code enforcement officer and plaintiff's assistant, but at a higher salary and without
any input from plaintiff.  According to plaintiff, "Nargizian then began inviting [the assistant] to
weekly Department Head meetings though I remained head of the Building Department."  (Id.).
Defendants, relying on Village Board minutes, assert the assistant was initially hired to a
temporary, 90-day position at a salary not to exceed $15,000.  (Puglielle, Jr. Decl. Ex. T at 5).

IV.   Criminal Charges and Suspension

On August 13, 2014, a Sullivan County Grand Jury charged plaintiff by indictment with
nine counts related to the demolition of the old courthouse:  one count of bribe receiving in the
third degree, one count of criminal mischief in the second degree, two counts of conspiracy in

the fifth degree, three counts of official misconduct, one count of endangering public health, safety, or environment, and one count of criminal nuisance in the second degree.

In January 2017, the County Court dismissed the indictment in the furtherance of justice. People v. Snowden, 75 N.Y.S.3D 108, 110 (2018).  The Appellate Division, Third Department, reversed the lower court's decision and reinstated the charges.  Id. at 112.  Thereafter, plaintiff accepted a resolution of the charges through a nunc pro tunc adjournment in contemplation of dismissal.

On August 19, 2014, after plaintiff's indictment, the Village Board, including defendants Roe, Solomon, and Weyer, voted to suspend plaintiff.  Although Village Board meeting minutes indicate plaintiff was suspended with pay (Puglielle, Jr. Decl. Ex. F at 2), plaintiff asserts he was suspended without pay for thirty days, the maximum allowed under the Civil Service Law, and then placed back on salary.

V.      Civil Service Section 75 Hearing

On July 1, 2016, the Village brought three charges for incompetency and misconduct against plaintiff pursuant to section 75 of the Civil Service Law.  The first charge alleged plaintiff had been "indicted by a Sullivan County Grand Jury for various actions which constituted criminal conduct" and incorporated the criminal charges brought against plaintiff based on the demolition of the courthouse.  (Puglielle, Jr. Decl. Ex. G at ECF 2).  The second and third charges alleged plaintiff had taken actions that "were improper and endangered the health, safety and welfare of others," and concerned other actions plaintiff had taken as code enforcement officer.  (Id. at ECF 2–3).

A Civil Service Law Section 75 hearing was conducted on July 27 and 28, 2016. Because the disciplinary charges were brought against plaintiff more than eighteen months after

the commission of the relevant acts, the hearing officer found the disciplinary charges could not be sustained unless the acts constituted a crime.

The hearing officer found there was substantial evidence plaintiff had committed the crime of official misconduct, and therefore sustained the first charge. The hearing officer did not sustain the second or third charges.

As for a penalty, the hearing officer wrote:

> Since the allowing of the demolition of the courthouse building to proceed without a permit and without an asbestos abatement was serious and substantial misconduct, my recommendation is that the Respondent's penalty or punishment should certainly be greater than a reprimand or a fine. However, I leave the extent of the penalty or punishment to the Village.

(Section 75 Hearing Dec. at 14).

By "Notice of Determination" dated September 12, 2016, signed by defendant Mayor Solomon and Villager Manager David Sager, plaintiff was terminated.

Plaintiff challenged his termination by filing an Article 78 proceeding in Supreme Court, Sullivan County. The Article 78 proceeding was transferred to the Appellate Division, Third Department, which upheld the Village's determination to terminate plaintiff's employment as being supported by substantial evidence. See Snowden v. Village of Monticello, 89 N.Y.S.3d 366, 370 (2018).

## DISCUSSION

I.  Legal Standard

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material

fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).[5]

A fact is material when it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  <u>Wilson v. Nw. Mut. Ins. Co.</u>, 625 F.3d 54, 60 (2d Cir. 2010).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  <u>Zalaski v. City of Bridgeport Police Dep't</u>, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249–50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." <u>Brown v. Eli Lilly & Co.</u>, 654 F.3d 347, 358 (2d Cir. 2011).  The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him.  <u>Dawson v. County of Westchester</u>, 373 F.3d 265, 272 (2d Cir. 2004).

---

[5]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial.  Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.     Collateral Estoppel

Defendants argue plaintiff is collaterally estopped from asserting a First Amendment retaliation claim because of plaintiff's section 75 hearing.[6]

The Court disagrees.  However, the section 75 hearing officer's factual findings are entitled to preclusive effect.

"Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding."  Marvel Characters, Inc. v. Simon, 310 F.3d 280, 288 (2d Cir. 2002).  It applies when:  "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final

_____

[6]     Defendants also argue in a footnote that the Rooker-Feldman doctrine bars plaintiff's claims.  That argument is plainly without merit, as plaintiff does not complain of injuries caused by a state court judgment.  See Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005).

judgment on the merits."  Id. at 288–89.  "The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues[,] whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issues."  Constantine v. Teachers Coll., 448 F. App'x 92, 93–94 (2d Cir. 2011) (summary order) (quoting Evans v. Ottimo, 469 F.3d 278, 281–82 (2d Cir. 2006)).

Under 28 U.S.C. § 1738, state court judgments have "the preclusive effect the courts of that state would give them."  McGuinn v. Smith, 523 F. App'x 764, 765 (2d Cir. 2013) (summary order).  "New York courts give quasi-judicial administrative fact-finding preclusive effect where there has been a full and fair opportunity to litigate."  Matusick v. Erie Cty. Water Auth., 757 F.3d 31, 45 (2d Cir. 2014).  "This rule applies to findings made by administrative officers after conducting section 75 hearings."  Id.  However, "[a] hearing officer's determination that the plaintiff had engaged in the charged conduct, and that these violations called for [the plaintiff's] termination, does not preclude a jury from later finding that the plaintiff was also terminated at least in part because of discriminatory reasons."  Leon v. N.Y.C. Dep't of Educ., 612 F. App'x 632, 635 (2d Cir. 2015) (summary order) (quoting Matusick v. Erie Cty. Water Auth., 757 F.3d at 47).  That is because "[t]he plaintiff could be successful on the state anti-discrimination claims or the section 1983 claims even if the jury were to accept that there were legitimate reasons for terminating him, too."  Matusick v. Erie Cty. Water Auth., 757 F.3d at 47.

Here, the issue of discrimination was not fully litigated or decided at the section 75 hearing.  As just noted, termination for cause does not "necessarily preclude[] the possibility of termination motivated by unlawful animus."  Leon v. N.Y.C. Dep't of Educ., 612 F. App'x at 635.

Defendants argue plaintiff asserted a discrimination argument in his closing argument at the section 75 hearing, and that the Village responded in kind.  However, the hearing officer did not so much as mention the issue of discrimination in his decision.  The parties' remarks in closing arguments, therefore, are not sufficient to find the issue of discrimination was actually litigated and decided.  Cf. Washington v. N.Y.C. Dep't of Educ., 740 F. App'x 730, 733 (2d Cir. 2018) (summary order) (holding issue of discrimination "was actually litigated and decided" because the hearing officer "ruled decisively and specifically on whether [the plaintiff] suffered disability discrimination after considering the arguments from each side.").  Moreover, there is no "indication that if the hearing officer had heard this evidence, it would have been within his statutorily defined authority to review that allegation, or that he would have found that [the plaintiff's] termination was warranted."  Matusick v. Erie Cty. Water Auth., 757 F.3d at 48.

However, as noted above, the hearing officer's factual findings are entitled to preclusive effect.  See Thomas v. Town of Se., 336 F. Supp. 3d 317, 326 (S.D.N.Y. 2018) (citing Matusick v. Erie Cty. Water Auth., 757 F.3d at 49) ("Nevertheless, this Court may give preclusive effect to the factual findings of the Section 75 Hearing Officer, insofar as such findings preclude Plaintiff from arguing facts to the contrary.").

To the extent plaintiff argues the section 75 hearing officer's findings of fact are not entitled to preclusive effect because he applied a "substantial evidence" standard as opposed to a "preponderance of evidence" standard, that argument is without merit in light of the Second Circuit caselaw cited above.  See Matusick v. Erie Cty. Water Auth., 757 F.3d at 49.

Accordingly, plaintiff's retaliation claim is not barred by collateral estoppel.  At the same time, however, the section 75 hearing officer's factual findings are entitled to preclusive effect.

III.   <u>Policymaker Exception</u>

Defendants argue plaintiff held a policymaking position and therefore is not protected under the First Amendment for dismissal based on his political association with Mayor Jenkins.

The Court disagrees.

"As a general rule, public employees may not be dismissed for the exercise of their First Amendment rights." <u>Kaluczky v. City of White Plains</u>, 57 F.3d 202, 208 (2d Cir. 1995). "However, political affiliation and political viewpoint are permissible employment criteria for positions involving policy-making and confidential employees." <u>Id</u>.

A defendant raising this affirmative defense bears the burden of proof. <u>Cicchetti v. Davis</u>, 607 F. Supp. 2d 575, 577 (S.D.N.Y. 2009). The defendant "must demonstrate a compelling interest to justify any infringement of an employee's First Amendment rights, . . . [and] must therefore show that party affiliation is an appropriate requirement for the effective performance of the public office involved." <u>Kaluczky v. City of White Plains</u>, 57 F.3d at 208. "Whether an employee is a policymaker is a question of law for the Court, though it requires a factual inquiry into the nature of the job itself." <u>Cicchetti v. Davis</u>, 607 F. Supp. 2d at 577–78.

To determine whether an employee is a policymaker, the Court must "discern the <u>duties inherent</u> in the offices held by the plaintiff[]," rather than examine the duties actually performed. <u>Gordon v. County of Rockland</u>, 110 F.3d 886, 888 (2d Cir. 1997). The Court looks at eight factors:

> whether the employee (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of policymakers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders.

Vezzetti v. Pellegrini, 22 F.3d 483, 486 (2d Cir. 1994).  "This list is not exhaustive, but instead serves as a guide; no one factor or group of factors is always dispositive."  Butler v. N.Y.S. Dep't of Law, 211 F.3d 739, 744 (2d Cir. 2000).  Factors (4) through (8) are distilled into the question of "whether the employee in question is empowered to act and speak on behalf of a policymaker, especially an elected official."  Gordon v. County of Rockland, 110 F.3d at 890.

Here, for substantially the same reasons the Court stated in denying defendants' motion to dismiss on the same grounds, defendants are not entitled to summary judgment on the issue of whether plaintiff was a policymaker.  See Snowden v. Solomon, 2018 WL 1406624, at *1 (S.D.N.Y. Mar. 20, 2018).

Defendants argue the code enforcement officer is empowered to act and speak on behalf of policymakers.  The Court is not persuaded.  At most, the Village Code authorizes the code enforcement officer to enforce policy, and even that authority is circumscribed.  For instance, the Village Code authorizes the code enforcement officer to render an opinion as to whether a building or structure is dangerous or unsafe to the public, but the final decision to render a building dangerous or unsafe rests with the Village Board.  Village Code § 119-5, 6, available at https://ecode360.com/MO0528.  The Village Code also allows the code enforcement officer to issue a compliance order to remedy a condition or activity found to exist in a building or structure, but the code enforcement officer may not commence an action for injunctive relief for violation of the Village Code or a compliance order without authorization from the Village Manager.  Id. § 105-15.  Likewise, the code enforcement officer may enforce the Village Code provisions regarding noise, but only the Village Board has authority to issue a variance from the application of the noise regulations.  Id. § 185-8, 10.

Defendants also argue Jenkins empowered plaintiff to act in his stead as Mayor and Village Manager when Jenkins was out of the office.  But the Court must examine the "duties inherent in the offices held by the plaintiff[]," not the duties actually performed.  Gordon v. County of Rockland, 110 F.3d at 888.

Accordingly, defendants are not entitled to summary judgment on the issue of whether plaintiff is a policymaker.

IV.    First Amendment Retaliation Claim

Defendants argue the undisputed facts demonstrate plaintiff did not engage in protected conduct and would have been subjected to the same adverse employment action even in the absence of the asserted protected conduct.

The Court disagrees.

"To establish a First Amendment retaliation claim for political association in the public employment context, a plaintiff must show that:  (1) he was engaged in protected activity; (2) he suffered an adverse employment decision; and (3) there was a causal connection between the protected activity and the adverse employment decision."  Bierce v. Town of Fishkill, 656 F. App'x 550, 552 (2d Cir. 2016) (summary order).  "Once a plaintiff has presented such evidence, the defendant may respond by showing, by a preponderance of the evidence, that it would have taken the same adverse employment action regardless of the plaintiff's conduct."  Id.

As for the first element, activity is protected only if it "touches on a matter of public concern."  Wrobel v. County of Erie, 692 F.3d 22, 28 (2d Cir. 2012).  "[A] First Amendment retaliation claim may be based on a perceived association, rather than actual protected association."  Zehner v. Jordan-Elbridge Bd. of Educ., 666 F. App'x 29, 34 (2d Cir. 2016) (summary order).  "Whether association or speech is on a matter of public concern is a fact-

intensive inquiry; nevertheless it is a question of law for the court to decide."  Wrobel v. County of Erie, 692 F.3d at 28.

Regarding the third element, "[t]o establish causation, a plaintiff must show that his protected activity was a substantial motivating factor in the adverse employment decision." Bierce v. Town of Fishkill, 656 F. App'x at 552.  "This may be done either directly, by evidence of retaliatory animus, or indirectly, by circumstantial evidence, such as by showing that the protected activity was closely followed in time by the adverse employment decision."  Id.

Here, there is a disputed issue of material fact as to whether plaintiff was politically associated with Mayor Jenkins, or whether defendants perceived plaintiff as being politically associated with Mayor Jenkins.  Mayor Jenkins testified that although plaintiff would not campaign for him, they "would have parties, events and stuff like that."  (Sussman Aff. Ex. 8 at 88).  Jenkins also testified on election night in 2014, plaintiff was "probably" with him while defendants Weyers, Solomon, and others stood on the other side of the room—"us against them." (Id. at 171).  Further, plaintiff submitted evidence that Rue published remarks on her website describing plaintiff as Mayor Jenkins's "political ally," "pal," "buddy," and one of Jenkins's "cronies."  (Id. Ex. 17 at ECF 2–3).

There is also a disputed issue of material fact regarding whether plaintiff's political association or perceived political association with Mayor Jenkins was a substantial motivating factor in the decisions to suspend and terminate him.  Defendants Solomon, Weyers, and Rue voted to suspend plaintiff only five months after they allegedly formed a voting bloc on the Village Board and ousted Mayor Jenkins as Village Manager.  That is well within the time range the Second Circuit has found sufficient to infer a causal connection.  See Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001) (collecting

cases).  Moreover, Jenkins testified he told plaintiff, "these people here want you so bad.  They will do anything and everything because they don't want you to — they really want me and that's why they did a lot of that stuff to [plaintiff]."  (Sussman Aff. Ex. 8 at 114).  Further, Rue posted remarks on her website stating Jenkins "and his cronies" would be held accountable once the new board takes office.  (Sussman Aff. Ex. 17 at ECF 3).

Plaintiff also asserts defendants took a litany of other retaliatory actions against him, including terminating his secretary, refusing his request to use accrued sick time and then auditing that time, rescinding a two-year employment contract, taking back a car plaintiff had been assigned to perform his duties, moving his office, and appointing someone to serve as his assistant and inviting the assistant to department head meetings.  Regardless of whether these actions constitute adverse employment actions on their own, see Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 226 (2d Cir. 2006) ("[A]dverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand," as well as "lesser actions"), these actions further support finding a disputed issue of material fact as to whether there is a causal connection.  To the extent defendants offer alternative explanations for those supposed retaliatory actions, defendants' arguments raise issues for the jury, not the Court on summary judgment.

Defendants argue plaintiff would have been subjected to the same adverse action notwithstanding his political association or perceived political association with Jenkins.  Nonetheless, for the same reasons just discussed, a reasonable jury could find, to the contrary, that plaintiff would not have been suspended or terminated if not for his political association or perceived political association with Mayor Jenkins.  Moreover, as to plaintiff's termination, the section 75 hearing officer recommended only that the penalty on plaintiff should "be greater than

a reprimand or a fine," but left the extent of the penalty or punishment to the Village.  (Section 75 Hearing Dec. at 14).  Thus, the Village had discretion to impose a lesser punishment than termination, suggesting the section 75 hearing did not fully determine plaintiff's employment status.

Defendants also argue the Village Manager made an independent decision to terminate plaintiff.  But the "Notice of Determination" sent to plaintiff informing him of his termination after his section 75 hearing was signed by both the Village Manager and defendant Solomon, then-Village mayor, calling into question defendants' assertion that the Village Manager made an independent decision to terminate plaintiff.  (Puglielle, Jr. Decl. Ex. J).  Moreover, the Village Manager serves at the discretion of the Village Board.  See Village Code § 45-5.  Therefore, a reasonable jury could find the Village Board directed the Village Manager to terminate plaintiff.

Accordingly, the Court will not grant summary judgment in defendants' favor on plaintiff's First Amendment retaliation claim.

V.      Immunity

Defendants argue they are entitled to absolute or qualified immunity.

The Court agrees only as to Police Chief Mir, who is entitled to qualified immunity.

A.      Absolute Immunity

Defendants' actions to suspend and terminate plaintiff were discretionary personnel decisions and therefore not entitled to absolute immunity.

"Legislators are entitled to absolute immunity from civil liability for their legislative activities."  Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 210 (2d Cir. 2003).  "[A]bsolute legislative immunity for Section 1983 actions extends to local legislators."  Id.  "Legislative immunity applies to actions that are both '(1) substantively legislative, i.e., acts that

18

involve policy making,' and '(2) procedurally legislative, i.e., passed by means of established legislative procedures.'" Bloomingburg Jewish Educ. Ctr. v. Village of Bloomingburg, 111 F. Supp. 3d 459, 491 (S.D.N.Y. 2015) (quoting State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 89 (2d Cir. 2007)).

"Discretionary personnel decisions, even if undertaken by public officials who otherwise are entitled to immunity, do not give rise to immunity because such decisionmaking is no different in substance from that which is enjoyed by other actors." Harhay v. Town of Ellington Bd. of Educ., 323 F.3d at 210–11.

Accordingly, defendants are not entitled to absolute legislative immunity.

B.    Qualified Immunity

The only defendant entitled to qualified immunity is Chief Mir.

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "Defendants bear the burden of establishing qualified immunity." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015).

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was clearly established; and (3) even if the right was clearly established, whether it was objectively reasonable for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013).

Here, plaintiff asserts Chief Mir (i) lied in claiming that plaintiff misrepresented the absence of asbestos in the old courthouse, leading to an adverse decision at plaintiff's section 75 hearing, and (ii) improperly questioned plaintiff as to the removal of chairs from the community center.  Regarding the first issue, the section 75 hearing officer credited Mir's testimony.  As discussed above, the hearing officer's determination in this regard is entitled to preclusive effect.

As to the second issue, the only evidence in the record demonstrates Mir's questioning plaintiff on the removal of chairs from the community center was objectively reasonable. Plaintiff merely asserts Mir "antagonistically interviewed" him and told him the Village Manager believed he had stolen chairs.  (Pl. Aff. ¶ 9).  However, it is undisputed plaintiff had been occupying space at the community center at the time.  Moreover, it is undisputed Mir also questioned other persons who were present at the time in the community center.  Further, it is undisputed Mir did not bring any charges against plaintiff, and plaintiff does not assert he suffered any adverse consequences from the questioning.  Accordingly, Mir's actions were objectively reasonable.

However, for the reasons discussed above, there are genuine issues of material fact as to whether the remaining defendants violated plaintiff's First Amendment rights by retaliating against plaintiff for his political association or perceived political association with Mayor Jenkins.  Moreover, plaintiff's right to be free from retaliation based on his First Amendment right to political association was clearly established at the time.  See State Emp. Bargaining Agent Coal. v. Rowland, 718 F.3d 126, 137 (2d Cir. 2013) ("[A]t the time of defendants' actions [in 2003] it was clearly established that firing employees based on political belief and association plainly constituted an unconstitutional condition, unless the employer showed

that he had a vital interest in doing so.").  Finally, for the same reasons discussed above, there are genuine issues of material fact as to whether defendants' actions were objectively reasonable.

Accordingly, Police Chief Mir is entitled to qualified immunity.  The remaining defendants are not.

## CONCLUSION

The motion for summary judgment is GRANTED IN PART and DENIED IN PART.

Police Chief Robert Mir is entitled to qualified immunity.  Plaintiff's First Amendment retaliation claim may proceed against all other defendants.

By March 2, 2020, the parties shall file a Joint Pretrial Order in accordance with the Court's Individual Practices.

All counsel shall appear for a status conference on March 18, 2020, at 2:30 p.m., at which time the Court will set a trial date and a schedule for pretrial submissions.  The parties shall come prepared to discuss whether the Court should refer this case to the Court's mediation program or to the magistrate judge for a settlement conference.

The Clerk is instructed to terminate defendant Robert Mir from the docket and terminate the motion.  (Doc. #59).

Dated:  January 31, 2020
        White Plains, NY

                    SO ORDERED:

                    _____
                    Vincent L. Briccetti
                    United States District Judge

21