

**DRAKE LOEB** PLLC
ATTORNEYS AT LAW

555 Hudson Valley Avenue, Suite 100
New Windsor, New York 12553

Phone: 845-561-0550
Fax: 845-561-1235
www.drakeloeb.com

James R. Loeb
Richard J. Drake, *retired*
Glen L. Heller*
Marianna R. Kennedy
Gary J. Gogerty
Stephen J. Gaba
Adam L. Rodd
Dominic Cordisco
Ralph L. Puglielle, Jr.
Nicholas A. Pascale

Alana R. Bartley
Aaron C. Fitch
Judith A. Waye
Michael Martens

Jennifer L. Schneider
Managing Attorney

*LL.M. in Taxation

December 13, 2021

Hon. Cathy Seibel
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, New York 10601-4150

Re: James Snowden v. Village of Monticello
Case No.: 17-cv-02631
Our File No.: 08977-68463

Dear Judge Seibel:

I am writing in follow-up to the pretrial conference conducted on December 10, 2021.

At the conference, there was discussion regarding the defendant's request that the jury be charged as to the defendant's vital interest in taking adverse employment action against the plaintiff. Your Honor pointed out that when a municipal employer fires a policymaker because of the policymaker's political association, the "vital interest" test can be triggered under certain circumstances by the policymaker's political affiliation. As indicated at the conference, the Village does not contend that it had a vital interest in taking adverse employment action against the plaintiff because of his alleged political association. Nor does the defendant contend that it suspended or terminated the plaintiff because of his alleged political association.

However, the Village does contend (and requests a charge to the effect) that an indictment of an employee (whether a policymaker or not) is a legitimate, non-retaliatory reason for adverse employment action premised on the fact that the charged criminality of the employee *itself* impairs the efficient operation of its governmental functions. Here, having an indicted code enforcement officer in charge of implementing the zoning code, issuing or denying permits, citing property owners for violations, and similar activities, would impair the efficiency of its governmental operations and the public perception of being dealt with fairly. See Waters v. Churchill 511 U.S. 661, 674–75, 114 S. Ct. 1878, 1887–88, 128 L. Ed. 2d 686 (1994) ("Government agencies are charged by law with doing particular tasks. Agencies hire employees to help do those tasks as effectively and efficiently as possible. When someone who is paid a salary so that she will contribute to an agency's effective operation begins to do or say things that detract from the agency's effective operation,

Hon. Cathy Seibel
December 13, 2021
Page 2

---

the government employer must have some power to restrain her."); Arnett v. Kennedy, 416 U.S. 134, 168, 94 S.Ct. 1633, 1651, 40 L.Ed.2d 15 (1974) ("To this end, the Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs. This includes the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch. Prolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency.")

As for notice, the defendant has put the plaintiff on notice of the aforesaid defense throughout this action, including by the defendant's third affirmative defense, which asserts that the adverse action complained of was based on legitimate reasons unrelated to the plaintiff's political association. If the plaintiff sought more particularity as to this defense, it was incumbent on the plaintiff to do so through discovery. However, the plaintiff did not seek to do so and opted not to take any depositions.

In addition to its answer, the Village raised this defense in motion submissions (see the enclosed excerpt (¶ 6) from former Trustee Doug Solomon's affidavit submitted in support of his summary judgment motion) and appellate submissions. In that regard, on appeal, the Village pointed out that under Village Law §4-412, the Board of Trustees is required to undertake all acts to preserve and protect the property, safety, health, comfort, and general welfare of its citizens and further pointed out that "the state has a significant interest in immediately suspending, when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility, such as police officers." See Gilbert v. Homar, 520 U.S. 924 (1997); Cooke v. Soc. Sec. Admin., 125 F. App'x 274, 277 (Fed. Cir. 2004). (Excerpts from the defendant's appellate submission are enclosed.)

I thank the Court for its attention to this matter.

Respectfully,

*/s/ Ralph L. Puglielle, Jr.*

RALPH L. PUGLIELLE, JR.

RLP/lu/1033875
cc: Sussman & Associates

of Monticello and charged with one count of Bribe Receiving in the Third Degree (PL § 200.10), one count of Criminal Mischief in the Second Degree (PL § 145.10), two counts of Conspiracy in the Fifth Degree (PL § 105.05(1)), three counts of Official Misconduct (PL § 195.00(1), (2)), one count of Endangering Public Health, Safety or Environment (ECL § 71–2711(3)), and one count of Criminal Nuisance in the Second Degree (PL § 240.45(1)). (A true and accurate copy of the Sealed Indictment (No. 156S-2014) is annexed as Exhibit "E.") At a meeting of the Board of Trustees that was held on August 19, 2014 after the plaintiff had been indicted, the Board of Trustees voted to suspend the plaintiff *with pay* in accordance with Civil Service Law §75. I, Ms. Rue and Ms. Weyer voted in favor of the suspension. Mr. Jenkins, who had also been indicted, voted against the suspension while another trustee abstained. (A true and accurate copy of the meeting minutes are annexed as Exhibit "F.")

6. I did not vote in favor of suspending the plaintiff because of any alleged political association that he claims to have had with Mr. Jenkins. Rather, I voted in favor of suspending the plaintiff because he, while under indictment for actions specifically undertaken in his capacity as code enforcement officer, could not continue enforcing the applicable building codes against village residents under such circumstances. Accordingly, I voted in favor of suspending the plaintiff with pay pending the resolution of the criminal charges and Civil Service Law §75 hearing.[1]

7. Thereafter, based upon the same conduct for which the plaintiff was under indictment and other acts undertaken in his capacity as code enforcement officer, the Village preferred charges against the plaintiff for incompetency and misconduct. Charge 1 pertained to the plaintiff having been indicted by a Sullivan County grand jury. Charges 2 and 3 pertained to

---

[1] The plaintiff alleges that I was involved in locking him out of his office after he was suspended. At no time did I deny the plaintiff access to his office or discuss locking the plaintiff out of his office with Ms. Rue, Ms. Weyer, Mr. Nargizian of Chief Mir. Nor did the plaintiff ever broach this issue with me.

3

Nargizian was not involved in the decision to suspend the plaintiff; there is no evidence in the record showing that Nargizian even discussed the plaintiff's suspension, at any time, with any of the defendants-trustees.

In light of the plaintiff's indictment for acts committed in the performance of his official duties, the Board of Trustees, which is required by Village Law §4-412 to "do all acts . . . which shall be deemed expedient or desirable for the good government of the village, its management and business, the protection of its property, the safety, health, comfort, and general welfare of its inhabitants," was duty-bound to, and properly did vote to, suspend the plaintiff. Clearly, the Village could not have continued to charge the plaintiff, as code enforcement officer, with the responsibility of enforcing the applicable laws against village residents while he was under indictment for various felonies and misdemeanors in connection with the performance of his duties and responsibilities as code enforcement officer.

After the suspension, a Civil Service Law §75 hearing was conducted on July 27 and 28, 2016. (A-201.) It is undisputed that the hearing officer found that the plaintiff had engaged in activity rising to the level of a crime in connection with the performance of his official duties. The hearing officer found that "[i]t is clear that the non-action of Respondent Snowden in allowing the demolition of the old Courthouse on Pleasant Street to go forward, knowing that no permit for the demolition had ever been issued by the Village Manager and also knowing that no

Fifth Degree (PL § 105.05(1)), three counts of Official Misconduct (PL § 195.00(1), (2)), one count of Endangering Public Health, Safety or Environment (ECL § 71–2711(3)), and one count of Criminal Nuisance in the Second Degree (PL § 240.45(1)). (A–101.)

Under the circumstances, at the time of the challenged action, it was objectively legally reasonable (and necessary) to suspend the plaintiff. In that regard, Village Law §4-412 requires the Board of Trustees to "do all acts . . . which shall be deemed expedient or desirable for the good government of the village, its management and business, the protection of its property, the safety, health, comfort, and general welfare of its inhabitants." Further, as observed by the Supreme Court: "[T]the State has a significant interest in immediately suspending, when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility, such as police officers." Gilbert v. Homar, 520 U.S. 924, 932, 117 S. Ct. 1807, 1813, 138 L. Ed. 2d 120 (1997). See also Cooke v. Soc. Sec. Admin., 125 F. App'x 274, 277 (Fed. Cir. 2004) (internal quotations and citation omitted) ("this court has held that the criminal charges may constitute the substantive basis for indefinite suspension without pay pending the outcome of the criminal proceedings, as long as the agency also shows that the nature of the crime alleged relates to the employee's ability to perform his or her duties").

4